ELIZABETH LAWTON et al., Executors, etc., Respondents, *v.* SAMUEL G. CORLIES et al., Appellants.

While technical words in a will are presumed to have been used in their technical sense, when it appears by the context and from extraneous facts, that the testator used the words in their common and popular sense, this overcomes the presumption.

The will of G., after directing his executors to pay his debts and funeral expenses, contained this provision: "I order and direct that my estate be divided among my heirs at-law, in accordance with the laws of the state of New York applicable to persons who die intestate, and that no bond or security whatever be required of my executors hereinafter named in the settlement and distribution of my estate, real or personal." The testator appointed his half-brother and another executors. By a codicil, after reciting the death of his half-brother, he appointed two other persons executors "in lieu of those named," authorized them to sell and convey real estate and directed that they should not be required to give any bonds or security. The testator left a large amount of personalty, but no real estate; his only heirs-at-law were a sister, who had been insane many years, four nephews and nieces, three grand-nieces

and one grand-nephew. In an action for a construction of the will, it did not appear that the testator owned any real estate at the time the will and codicil were executed. *Held*, that the words "heirs-at-law" were not used in their strict legal sense, but to indicate persons who would succeed to the property in case of intestacy; that it was the testator's intention that his real estate, if any, should be divided according to the Statute of Descents, and his personal property according to the Statute of Distributions; and, therefore, that the grand-nieces and nephew were not entitled to share in the distribution of the estate.

*Luce* v. *Dunham* (69 N. Y. 39); *Keteltas* v. *Keteltas* (72 id. 312); *Tillman* v. *Davis* (95 id. 17); *Cushman* v. *Horton* (59 id. 151), distinguished.

Reported below, 58 Hun, 566.

(Argued March 19, 1891; decided June 2, 1891.)

APPEAL from judgment of the General Term of the Supreme Court in the first judicial department, entered upon an order made December 29, 1890, which affirmed a judgment in favor of plaintiffs entered upon a decision of the court on trial at Special Term.

This was an action by executors for the construction of a will. The testator, Samuel Green, a resident of this state, died December 9, 1889, leaving a last will and testament dated March 25, 1880, and a codicil thereto, dated May 23, 1888.

By the first clause of said will, he directed his executors to pay his debts and funeral charges as soon after his decease as they conveniently could.

The second clause is in these words:

"*Secondly*. I order and direct that my estate be divided among my heirs-at-law in accordance with the laws of the state of New York, applicable to persons who die intestate, and that no bond or security whatever be required of my executors hereinafter named in the settlement and distribution of my estate, real or personal."

By the third clause he appointed his half-brother, Caleb Coffin, and his friend, Edward P. Magoun, as the executors of his will, and revoked all former wills by him made.

By the codicil, after reciting the death of his half-brother, Caleb, he appointed the plaintiffs as executrix and executor, respectively, "in lieu of those named" in the will, and author-

ized them to sell any real estate that he might be possessed of at his decease, and to execute and deliver the deeds necessary to convey the same. He also directed that his executors should receive "double the amount of commissions allowed by the laws of said state as commissions to executors," and that they should not be "required to give any bonds or security."

He left personal estate to the amount of $230,000, but no real estate. He was never married, and left no ancestor, descendant or widow him surviving. His only heirs at law were Martha Green, a sister; Herbert L. Coffin, a nephew, and Elizabeth L. Coffin, a niece, children of Caleb Coffin, his deceased half-brother; Samuel G. Corlies, a nephew, and Amelia Hope Doeg, a niece, children of Phebe Corlies, a deceased sister; Clara W. Corlies, Anne W. Corlies, and Edmee A. Corlies, grand-nieces, and Howard W. Corlies, a grand-nephew, all infant children of John Edgar Corlies, who was a son of said Phebe Corlies.

John Edgar Corlies died June 22, 1883, and Phebe Corlies, his mother, died many years before.

The testator was on friendly terms with the said John Edgar, and also with his children, who have no property, but he was not in the habit of making them presents or doing anything for them, and while he had seen the two older children three or four times, he had never seen the others at all. There was no evidence that he " entertained any more love and affection for any of his relatives than for the others."

Said Martha Green and Samuel G. Corlies are both lunatics; the former having been so adjudged March 17, 1838, and the latter April 25, 1877, and the committee of each is a defendant in this action.

The Special Term held that the testator meant by the words " heirs-at-law," as used in his will, that real estate should "follow the Statute of Descents, and personalty the Statute of Distributions." The grand-nieces and grand-nephew were by the decree excluded from sharing in the personal property, because the Statute of Distributions does not extend beyond brothers' and sisters' children.

The General Term took the same view and affirmed the judgment. The infant children of John Edgar Corlies bring this appeal.

*John M. Scribner* for appellants. A testator is always presumed to use the words in which he expresses himself according to their strict and primary acceptation, unless from the context of the will it appears that he has used them in a different sense. (*Luce* v. *Dunham*, 69 N. Y. 39 ; Wigram on Wills, §§ 12–21 ; 2 R. S. 96, § 75 ; 4 Kent's Com. 535 ; 1 R. S. 752, § 9 ; *Tillman* v. *Davis*, 95 N. Y. 24 ; *Murdock* v. *Ward*, 67 id. 389 ; *Keteltas* v. *Keteltas*, 72 id. 312 ; *In re Aspden*, 2 Wall. 440 ; *Cushman* v. *Horton*, 59 N. Y. 149.) The trial judge erred in deciding that the personal estate of the testator must be divided according to the Statute of Distributions in cases of intestacy and not among his heirs at law. (*Woodward* v. *James*, 115 N. Y. 346.)

*Wilson M. Powell* for respondents. The personal estate of the testator must be divided according to the Statute of Distributions in cases of intestacy. (*Woodward* v. *James*, 115 N. Y. 346 ; *Cushman* v. *Horton*, 59 id. 149 ; *Murdock* v. *Ward*, 67 id. 387 ; *Dunham* v. *Luce*, 69 id. 36 ; *Keteltas* v. *Keteltas*, 72 id. 312.)

*Leslie W. Russell* for the Washington Trust Company, as committee, respondent. While the term "heirs," when used in a statute, denotes those who succeed to the real estate by the intestacy of the deceased, the common acceptation of it, as used by persons ordinarily, is the class who receive the property of the deceased. That testator did not intend to make this class larger than those who would be his next of kin. (*Woodward* v. *James*, 115 N. Y. 346.) In this state, the courts have decided that the term "heirs," when applied to personal property, means the same as "next of kin." (*Tillman* v. *Davis*, 95 N. Y. 17 ; *Wright* v. *Trustees*, 1 Hoff. Ch. 202 ; *Richard* v. *Miller*, 62 Ill. 417 ; *Wingfield* v. *Wingfield*, L. R.

[9 Ch. Div.] 658; *James* v. *Lloyd*, 33 Ohio St. 572; *Alexander* v. *Wallace*, 8 Lea, 569.) The division, as in the case of intestacy, being of personalty alone, the four grand-children cannot share, since representation does not extend beyond brothers' and sisters' children. (2 R. S. 97, § 75.)

VANN, J. The appellants claim that the testator is presumed to have used the words "heirs-at-law" in their strict and primary acceptation as *descriptio personarum*, and that the context, "in accordance with the laws of the state of New York," determines the method of division and indicates an intention that the estate should be divided *per stirpes* among those who, as his heirs-at-law, would have succeeded to his real estate if he had left any and had died intestate.

The respondents, aside from the executors, who are apparently neutral in this controversy, claim that the testator used the words "heirs-at-law" according to their common acceptation, to denote the class who receive the property of deceased persons; that the language of the will indicates that he owned real property, at its date, and of the codicil, that he contemplated owning real estate at the time of his death, and that by the direction to divide his property "in accordance with the laws of the state of New York applicable to persons who die intestate," he meant that his real estate should be divided according to the Statute of Descents, and that his personal property should be divided according to the Statute of Distributions.

The question presented, although important, is so narrow as to greatly restrict discussion, so far as it bears directly upon the point involved. It depends upon the intention of the testator, which is to be gathered from the few words used by him in relation to the subject, considered, if their meaning is doubtful, in the light of the circumstances surrounding him when he used them. (4 Kent's Com. 535.) One object that he had in making a will was to avoid the appointment of administrators and to relieve those who should succeed to his estate from the heavy burden of furnishing bail to the amount

of nearly half a million of dollars. Prominence was given to this feature in both the will and codicil, and in the latter, for further ease and convenience in settling his estate, he authorized his executors to sell and convey any real property of which he might die possessed. The unfortunate situation of one of his relatives, who would have been entitled to letters of administration if he had died intestate, in connection with the other circumstances, may have made this his sole object in making a will. (4 R. S. p. 2552, §§ 27, 28 [8th ed.].) With what intent did the testator direct that his estate should be divided among his heirs-at-law, in accordance with the laws of the state of New York applicable to persons who die intestate? It is to be observed that he directed that his estate should be " divided " without using any other word importing a gift, devise or bequest. This tends to confirm the theory, already suggested, that he intended to simply appoint executors to make the distribution, and to leave the distributees and the proportions to be determined by law. At the date of his will his heirs-at-law and next of kin were the same persons, as John Edgar Corlies, the father of the appellants, was then living. It does not appear whether at that time he owned real estate or not, except as a presumption may arise from his general reference to his estate as composed of both real and personal property. It does not appear that he owned real estate at the date of his codicil, except as a like presumption may arise from the language used by him in authorizing his executors to sell and convey. While he owned no realty at the time of his death, the will and codicil each speaks, as to existing facts, with reference to the date when it was written. It is clear, if he did not own real estate when he made the will or codicil, that he expected to own some at the date of his death, and his use of the word " heirs " is to be considered in the light of that fact. While technical words in a will, when uncontrolled by the context, are presumed to have been used in their technical sense, still the context may overcome the presumption when it appears thereby, and from extraneous facts of the kind already alluded to, that the testator used the words in their common

and popular sense. The context in the case in hand shows that the estate was to be divided in accordance with the laws of the state of New York applicable to persons who die intestate. The use of the words " heirs-at-law " in such a connection indicates, as we think, the legal heirs, in the sense of persons who would legally succeed to the property in case of intestacy, according to its nature or quality, the heirs-at-law taking the realty and the next of kin the personalty. The cardinal idea seems to be that the division should be made in accordance with the statute in case of intestacy. This, as was said by the learned General Term, seems to be " the plain import of the language used by the testator, &ast; &ast; &ast; giving to the persons forming each of these classes whatever of the estate would go to them under the laws of the state. &ast; &ast; &ast; As already suggested, there is nothing to indicate any other purpose. It is precisely as if the testator had said, ' I do not intend that there shall be any dispute over my estate. I mean to declare that the persons who are recognized by the law of the state of New York as entitled to a portion of it shall have it to the extent that the law declares. My real estate shall be divided amongst those to whom it would descend, and my personal estate shall be distributed between those who would be entitled to it, just as if no will had been made. And I make this will only for the purpose of securing the co-opera-tion of the executors whom I have named to take charge of my estate and protect it.' "

This construction is in conflict with no decision of this court to which our attention has been called, and it is in accordance with the recent case of *Woodward* v. *James* (115 N. Y. 346), which we regard as controlling. In that case the testator gave to his wife one-half the income from all his property of every kind, and the use of certain real estate during her life, and some specific personal property absolutely. He gave the remainder of the income to his " legal heirs " during the life of his wife, and upon her death he gave the " reversion and ownership " of all his property to his " legal heirs," except that in case any of his " legal heirs " should attempt in any manner to interfere

with or restrain his wife in the use and enjoyment of the property, such one of his "legal heirs" was to be forever debarred from any interest in his estate, and the share that otherwise would have gone to him or her was to be divided among the "remaining heirs, according to law." He left a brother, two half-sisters and nine nephews and nieces, the children of a brother, a half-brother and a half-sister, respectively, deceased, and the plaintiff, a grandchild of a deceased brother. It was held that the words "legal heirs," as used in the will, meant those who would take in case of intestacy and in the proportions prescribed; that the remaindermen, therefore, took *per stirpes,* and not *per capita,* and as, under the Statute of Distributions, representation goes no further than brothers' and sisters' children, and the rule of intestacy applies to the quantity of interest to be taken, the plaintiff had no interest in the personal estate. We are unable to distinguish that case in principle from the one now under consideration. In that case as in this there was personal property to distribute and a relative who would take under the term "heir" in its technical sense, who could not take under the Statute of Distributions; and it was held that "legal heirs" applied to those who would take, and as they would take under either statute if there had been no will. The phrase "according to law," was relied upon as indicating the intention of the testator, if any share was forfeited, to have such share distributed as if he had died intestate. In this case the intention is indicated by a much stronger phrase, for the testator declares that he wants his property divided "in accordance with the laws of the State of New York, applicable to persons who die intestate."

The appellants mainly rely upon *Luce* v. *Dunham* (69 N. Y. 36); *Keteltas* v. *Keteltas* (72 id. 312), and *Tillman* v. *Davis* (95 id. 17).

In *Luce* v. *Dunham,* the testator devised certain real estate, being all that he had at the date both of his will and of his death, to his wife, and, after a bequest to her and others, directed that the residuum of his estate, real and personal,

should be divided among his "heirs and next of kin in the same manner as it would be by the laws of the state of New York," if he should die intestate. The widow claimed that the use of the word "heirs," showed an intention to include her, but the court held that it related only to the realty devised, while the expression "next of kin" related to the personalty bequeathed, and excluded her from sharing in the residuary estate, citing *Murdock* v. *Ward* (67 N. Y. 387). The substance of the decision was that the widow was neither heir nor next of kin, and that the reference to the statute did not extend either term to her.

The other two cases involved the question whether the widow was included by either form of expression, as used by the respective testators, and it was held that she was not. They are not analogous in their facts to the case in hand, although the learned and extended discussion as to the meaning of the word "heirs," under varying circumstances, has a bearing more or less direct upon the question involved here.

In *Cushman* v. *Horton* (59 N. Y. 151), the court considered the question whether a testator meant his heirs apparent, as they were at the date of his will, or his heirs actual, as they would be at the date of his death. All of these cases recognize the principle that where the context of the will shows that the testator used the word "heirs," or the expression "heirs-at-law" or "next of kin" in a sense other than the primary legal sense, the actual intention must prevail over the use of technical language. In every case the aim was to get at the intention, and when that was found, not by conjecture, but by careful study of all the provisions of the will, it was blindly followed. So in this case, after giving due force to the term "heirs-at-law," we think that the testator meant, as he said, that his property should be divided according to law, the same as if he had not made a will, and hence that the judgment of the General Term should be affirmed, with costs to the respondents, payable out of the estate.

All concur, except POTTER, J., dissenting.

Judgment affirmed.