Dye, J.
As we read this will, it seems clear that the testator intended what he said when he directed that the remainder of the Harriet trust be distributed “ equally among all my grandchildren then living This will was made in 1892 and a codicil in 1898. It is reasonable to suppose that the testator employed the term “ grandchildren” to designate a class as it was then understood, which he limited to those 1 ‘ then living ’ ’. To include great-grandchildren in that carefully designated class requires us to define the term1 ‘ grandchildren ’ ’ as including any descendant—however remote. We have never gone so far and should not do so in a case where the wording is so clear, precise and readily understandable as in this instance. Whenever the term ‘ ‘ children ’ ’ has been given a secondary meaning in order- to include the issue of a deceased child, it has invariably been for the purpose of giving effect to the testator’s evident intent to prevent failure of the estate. In Prowitt v. Rodman (37 N. Y. *280 42 [1867]) and cases which followed it, the rulings were made to prevent a lapse of the estate. Here there is no possibility of such failure, since there are living grandchildren capable of taking the remainder. When this testator used the words “issue”, “ descendants ” or “ children”, it was not in the sense employed in Prowitt v. Rodman (supra); Matter of Brown (93 N. Y. 295); Matter of Paton (111 N. Y. 480), and other cases in which such use was relied on to ascertain testamentary intent for the sake of preserving the estate but, on the contrary, whenever such terms were used by this testator it was in connection with the disposition of specifically designated funds not here involved. The distribution of Harriet’s trust remainder was handled by different verbiage which, as we have pointed out, was to be “ equally among all my grandchildren then living ”, a specific, clearly ascertainable and definite class. In our view, the direction “ that my property shall be enjoyed by those of my own blood ’ ’ was a further indication of his intent to confine the distribution to his grandchildren ‘£ then living ’ ’. Grandchildren are one generation nearer to the testator and it is not unreasonable to suppose that in 1892 this testator was using the term in the sense understood in common parlance of his generation and as reflected by the cases then decided. This view is reinforced by reference to the precision with which the testator in a preceding clause of the will directs division and distribution £ ‘ among all the children of my said daughter ’ ’. It seems to us that the only possible occasion justifying a more inclusive meaning would be to avoid failure of the estate.
If there were no “ grandchildren then living ”, we would find it easy to analogize the two situations and would gladly approve a construction that would save the estate by giving the remainder to the great-grandchildren, as we did in those cases where the designated remainderman class was a child or children, who had died leaving issue. Here we do not have that problem. There are living grandchildren.
To sum up, there is no good reason for saying this will means other than as written. Absent a clear showing of unmistakable intent to the contrary, no problem exists requiring construction. The wording is not unclear or ambiguous and the meaning is obvious. When the language used is given effect, the estate is preserved since there are living grandchildren capable of *281 receiving the fund and it will thus he enjoyed by “ those of my [testator’s] own blood ”, thus satisfying the testator’s primary purpose and evident intent. To say he intended otherwise is to remake his will, and this we may not do (Matter of Villalonqa, 6 N Y 2d 477).
The order appealed from should be affirmed, with costs to all parties appearing separately and filing separate briefs, payable out of the estate.