OPINION OF THE COURT
Bellacosa, J.
In concluding that appellants are not entitled to inherit under the relevant gift provision of this disputed will, we reaffirm two basic principles governing the adjudication of decedents’ estates by courts: our primary function is to effectuate the testator’s intent and the words used to express that intent are to be given their ordinary and natural meaning.
Testator executed his will in 1955 and it was admitted to probate in 1959. At issue is clause (c) of paragraph fifth, which bequeaths part of the residuary of one of two trusts to the "surviving child or children” of testator’s brother Leonard, who predeceased the trust’s life tenant, testator’s widow, Elsie. A "surviving child” of Leonard, Jacqueline, is respondent before us and claims entitlement to the whole of that residuary portion. Appellants are the widow and children of Leonard’s other child, Daniel (Jacqueline’s brother), who, like his father, predeceased the life tenant. Daniel’s children, as appellants, strive to take under paragraph fifth’s gift provision and urge the courts to construe the word "children” to include grandchildren so that the collateral descendants of the testa *452 tor, i.e., the grandnephews and grandnieces, can partake of the testamentary plan. Since they are faced with the fundamental proposition that the word "children” will be given its ordinary and natural meaning unless the will as a whole shows an unmistakable intent that different or remoter persons or classes should be included, they argue that the onetime use of the word "issue” in a different, inoperative clause of the will creates ambiguity and warrants forsaking the general rule of construction. Daniel’s widow, as separate appellant, seeks to inherit on an argument that his inchoate share vested in him prior to the death of the life tenant, Elsie.
We affirm the order of the Appellate Division because a construction which would substitute for the testator’s chosen word a broader, judicially applied definition is unwarranted and would be unsettling to the law of descent and distribution. Further, the relevant vesting date can be only the death of the life tenant.
Carl V. E. Gustafson was 59 years old, married and childless when he died in 1959. He disposed of virtually his entire estate through two trusts of equal size with an integrated, complementary residuary plan. The trust established in paragraph sixth provided that testator’s brothers, Leonard and Roy, were to be equal income beneficiaries, and upon the death of either of them his one-half interest in the trust (that is, a one-fourth interest in the residuary) would pass to "his child or children”. When Leonard died in 1978, his children, Jacqueline and Daniel, took equally of Leonard’s share in this trust. Roy continues his life tenancy in the other portion of this trust. The half of testator’s estate reflected in this trust is not involved in this case.
This case and appeal revolve around the trust created in paragraph fifth of the will, in which Elsie, testator’s widow, held a life estate. Upon her death, testator’s will directed the corpus of this trust be paid as follows:
"(a) One-half to my brother, E. Leonard Gustafson.
"(b) One-half to my brother, Roy L. Gustafson.
"(c) If a brother predeceases Elsie Warren Gustafson, then his share of this Trust shall be paid over to his surviving child or children, share and share alike.
"(d) If one of my brothers shall predecease Elsie Warren Gustafson, without issue surviving, then his part of this Trust shall be paid over to his surviving brother.” *453 Roy survived Elsie and took his share pursuant to clause (b). This, too, is not involved in the case.
At issue then is only the portion that would have been Leonard’s one-quarter residuary share under clause (a), which, because of Leonard’s predeceasing Elsie, must pass through clause (c). Leonard’s son, Daniel, having also predeceased Elsie, leaves a widow and children who now seek to take a share of the residuary through this clause, though they are not "surviving child or children”.
Courts construing donative instruments are governed by a threshold axiom: a testator’s intent, as ascertained "from the words used in the will * * * according to their everyday and ordinary meaning”, reigns supreme (Matter of Walker, 64 NY2d 354, 357-358; Matter of Cord, 58 NY2d 539, 544; see also, 4 Page, Wills § 30.7, at 44). In Matter of Villalonga (6 NY2d 477, 484), the natural and ordinary meaning of the word at issue here was held and applied as follows: “ '[c]hildren’ means immediate offspring, and we reiterate the rule of the [Matter of] Schaufele [252 NY 65, 67] case that it will never be held to include grandchildren 'unless the will as a whole shows that unmistakable intent.’ ” (Emphasis added.) The will before us cannot clear that high hurdle.
The order of testator’s priorities is straightforwardly expressed in paragraph fifth. First, he provided for his widow as long as she lived. Then, upon her death, his brothers would benefit (para fifth [a], [b]). If his brothers) predeceased his widow, then the focus of testator’s beneficial intent shifted to the "surviving child or children” of his brothers) (para fifth [c]), a generation proximate to himself. The final subdivision of this paragraph provides that if a brother dies "without issue surviving”, the surviving brother takes all. Thus, if neither issue nor children survived one brother, the other brother (or his children or his issue) would take to prevent a lapse. Accordingly, from the four corners of the will’s relevant gift provision, assigning to each word its ordinary meaning, the testamentary scheme is reasonably discernible. Carl Gustafson wanted to benefit: (1) his widow while she lived; (2) his brothers who survived his widow; and (3) if a brother did not survive his widow, then the brother’s children) who did so survive. Those preferences of the testator as to the order and distribution of his property are not "incoherent”, "inequitable”, "inconsistent” or "anomalous”, but even if they were, testators are privileged to act in any way they see fit to *454 displace the State’s otherwise mandated, homogenous distribution by intestacy, so long as they are compos mentis. Courts, on the other hand, are not privileged to put contrary or even additional words into a testator’s actual written expression in order retrospectively to effectuate their own notions of "fair” or "equitable” distribution of estates.
Prowitt v Rodman (37 NY 41 [1867]) does not support a different result. There, an exception to the plain meaning of "children” was allowed because "the testator intended that the remote descendants should be takers * * * if there should be a failure of the immediate offspring of [the trust life tenant]” (id., at 54 [emphasis added]; see also, Matter of Welles, 9 NY2d 277, 280 ["It seems to us that the only possible occasion justifying a more inclusive meaning (of 'children’) would be to avoid failure of the estate.”]). There is no failure of an estate here, which is the only justification for the exception to the paramount plain meaning rule of construction.
Nor is this case about the testator’s intention to disinherit unknown, collateral descendants two generations removed from him. The law of decedents’ affairs recognizes no rule requiring a testator to manifest an intent to disinherit in such circumstances. Rather, our rules relate to the testator’s intent to bestow a gift and to whom. In that respect, he was plain, precise and orderly, and appellants’ claim to a gift in this trust remainder by implication would wrongly extend the plainly expressed and universally understood words. Our ruling, therefore, is natural, not "narrow”, and a faithful application of the holding of the governing precedent, not an "extension” of it. Simply put, children means children in the judicial construction of this will.
The nongifted parties also weave a number of speculative scenarios designed to splice themselves into this will and into this testamentary plan. The problem, however, is that none of their hypotheses materialized and are therefore neither materially helpful nor relevant to the disposition of this controversy.
We must also address the vesting date with respect to the remainder of the trust at issue. The death of the testator’s life tenant, his widow, controls. Rather than "happenstance”, this is the common measuring device for the orderly transferences of decedents’ assets, a rule providing specificity, not serendipity. The vesting date here is arrived at by an applica *455 tion of well-settled principles of the law of future interests. The language of paragraph fifth (c) created a requirement of survival (see, 2A Powell, Real Property fl 328, at 763). When the first devisee or legatee takes a life estate, words of survivorship tend to " 'establish the time of the termination of all preceding interests as the time to which survival is required’ ” (Matter of Gautier, 3 NY2d 502, 509, quoting Restatement of Property § 251, at 1266). Here, the preceding interest terminated only upon the death of testator’s widow, Elsie, in 1986. Daniel’s predecease in 1981 is irrelevant in this respect and precludes his heirs from asserting that any entitlements inchoately vested in him before Elsie’s death to accrue later to their benefit.
As we have consistently held, the plain meaning of the testamentary language itself is the surest path to the judicial discernment of a testator’s donative intent. Expanding the application of exceptions to that sound general proposition would soon swallow the rule and render less secure the effectuation of testators’ relied upon, expressed intentions. Indeed, to create a new exception out of something called "paramount intent”, different from the intent clearly expressed on the face of a will and in its only relevant donative provision, would be seriously unsettling because it would sacrifice predictability, an especially crucial element in the field of decedents’ estates where "settled rules are necessary and necessarily relied upon” (Matter of Eckart, 39 NY2d 493, 500).
Accordingly, the order of the Appellate Division should be affirmed, with costs to all parties filing briefs payable out of the residuary trust at issue.