Matter of Pearce (2024 NY Slip Op 24078)

[*1]

Matter of Pearce

2024 NY Slip Op 24078

Decided on March 14, 2024

Surrogate's Court, Kings County

Graham, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the printed Official Reports.

Decided on March 14, 2024
Surrogate's Court, Kings County

In the Matter of the Petition of Holly Lucia Pearce for Construction of the Last Will and Testament of Claire Pearce a/k/a CLAIRE ANTOINETTE PEARCE, Deceased.

File No. 2019-2735/B

Petitioner Holly Pearce by Counsel
Greenfield Stein & Senior, LLP
600 Third Avenue
New York, NY 10016
Objectant Michael Pearce by Counsel
Pettus & Williams, PLLC
233 Broadway, Suite 2120
New York, NY 10279

Bernard J. Graham, S.

The e-filed documents listed by NYSCEF document numbers 36-39, 41-42, 44-47, and 50 were read in deciding the instant motion.
Preliminary Statement
In this contested miscellaneous proceeding, Holly Pearce (Petitioner), as Co-Executor of the estate of Claire Pearce a/k/a Claire Antoinette Pearce (Testator), seeks construction of a latent ambiguity in Article SECOND of Decedent's Last Will and Testament dated July 9, 2001 (Will). Michael Anthony Pearce (Objectant), also a Co-Executor of the estate, filed objections. Petitioner now moves for summary judgment and Objectant cross-moves for summary judgment. For the following reasons, Petitioner's motion is granted and the cross-motion is denied.
Background
The decedent died on June 12, 2019, survived by two children, the Petitioner and the Objectant. The decedent's Will was admitted to probate on May 26, 2020, and Letters Testamentary issued to Petitioner and Objectant, as Co-Executors. In the prior probate proceeding, the parties stipulated to resolving a dispute raised by Objectant by commencing this [*2]construction proceeding.
The Testator's estate includes, inter alia, a 4-story, 2-family brownstone (the Brownstone) and an appurtenant lot containing a backyard, private garden, parking pad and driveway (the Lot) located in the Park Slope neighborhood of Brooklyn, where the Testator resided at the time of her death. At issue is Article SECOND of the Will which provides in pertinent part as follows:
"I give the following real property to my daughter, HOLLY LUCIA PEARCE (a/k/a Holly Lester) if she survives me: My primary residence at the time of my death." (Emphasis in original.)
The Will further bequeathed all tangible personal property to Petitioner and the residuary estate to Petitioner and Objectant in equal shares. The parties inform that the residuary estate includes three parcels of real property located upstate and in North Carolina.
The Parties' Contentions
Petitioner seeks construction of the term "[m]y primary residence" in Article SECOND of Testator's Will to mean the Brownstone and Lot together. The dispute as to the meaning of that term arises from Objectant's contention that the Brownstone and Lot are assigned two separate lot numbers on the Tax map for Kings County, and bear two separate street addresses.[FN1]
Thus, Objectant argues, the Testator's "primary residence" means the Brownstone only and the Lot belongs in the residuary estate. Petitioner counters that by the term "[m]y primary residence," the Testator could only have meant both the Brownstone and Lot together, as she always considered them to be one property that was her residence.
In support of her motion, Petitioner asserts that for over 50 years, the Testator resided in the Brownstone, which is connected to the Lot containing a backyard, private garden, parking pad and driveway that the Testator actively used as part and parcel of her residence. Petitioner submits copies of a recorded deed dated March 21, 1968, when the Testator and her then spouse purchased the property, and a subsequent deed dated July 14, 1974, when the property was transferred to the Testator as sole owner. The deeds bear both tax lot numbers assigned to the Brownstone and Lot and recite a property description that encompasses both lots. Also submitted are copies of mortgages on the property taken in 1990 and 1994, which secured the loans with both tax lots as one property being mortgaged. Accordingly, Petitioner asserts, there is overwhelming evidence that the Testator considered the Brownstone and Lot to be one property that was her residence.
Objectant counters that the manner in which the Testator used the Lot has no bearing on whether she considered the Lot to be part of her residence. Objectant asserts that the Brownstone has its own backyard and the Lot itself is not an extension of the Brownstone's backyard. Rather, the two tax lots are separate properties and the only way to legally merge the two is with the [*3]permission of the City of New York, which the Testator never sought. Objectant further argues that the two lots are taxed separately, and that the Testator claimed a STAR tax abatement on the Brownstone only as her "primary residence." Moreover, when the Testator sought permission from the City to construct a parking pad in the Lot, she made the application using the Lot's street address, not the Brownstone's.
Discussion
The court's primary function in any will construction proceeding is to ascertain and effectuate the testator's intent. (Matter of Bernstein, 40 AD3d 1086, 1087 (2007); Matter of Gustafson, 74 NY2d 448, 451 [1989]). Intent is discerned by a reading of the will as a whole, and where its language is "clear and unmistakable so as to convey only one meaning," no recourse to external evidence is permitted in discerning the testator's intent. (Matter of Hastings, 184 AD2d 849, 850 [3d Dept 1992]). However, where a will provision contains a latent ambiguity, the court may consider extrinsic evidence to discern the testator's intent. (In re Estate of Luposello, 225 AD2d 551, 552 [2d Dept 1996]).
"Typically, a latent ambiguity arises where the language found in the will is clear and intelligible and suggests but a single meaning, but some extrinsic fact outside of the instrument creates a necessity for interpretation or a choice between two or more possible meanings." (11 Warren's Heaton on Surrogate's Court Practice § 187.01[5][b] [2024]). Here, the term "[m]y primary residence" in the subject Will is unambiguous in its common usage. However, Objectant has raised a latent ambiguity on the ground that the Brownstone and Lot bear two separate lot numbers according to the Tax map. Therefore, the Court will consider the extrinsic evidence submitted by the parties to discern the Testator's intent.
To determine a testator's intent, "[w]hat is needed is nothing more unusual than a common sense appraisal of probabilities and meanings." (In re Gallien, 247 NY 195, 203 [1928]). When a testator used words "in their common and popular sense," technicalities that can be attributed to the words should not defeat the testator's intent. (See Matter of Shannon, 107 AD2d 1084 [4th Dept 1985]; Armstrong v. Sheldon, 43 AD 248, 256 [4th Dept 1899]; Lawton v. Corlies, 
127 NY 100, 105 [1891].) It is indisputable that the common usage and understanding of the term "residence" includes an indoor structure and any attached outdoor areas including a backyard, garden, and parking structure or space. Moreover, the record proves that in her everyday use and occupancy of the Brownstone and Lot, the Testator made no delineation between the two as to what she considered to be her "residence."
Objectant's argument relies mostly on the Tax map designations of lot numbers and property addresses of the Testator's property, which misses the point. The Court's mission in a will construction proceeding is to ascertain the Testator's intent using common sense, not to strain to interpret common words based on extrinsic legal technicalities. According to Objectant's reasoning, the Testator intended to bequeath the Brownstone to Petitioner, but saddle her with the possibility of a partition action resulting in a sale and development on the backyard, private garden and parking pad that the Testator enjoyed and cultivated for over 50 years. The Testator, a highly educated and accomplished Jurist, would not have intended for that [*4]possibility.[FN2]

The case cited by Objectant to support his position, Estate of Schermerhorn, is readily distinguishable. The testator's will in that case bequeathed her "residence and its contents" to her grandson and the residuary estate to a church. The testator's real property included her home and appurtenant farm acreage, which were identified in a single deed, but were separate lots that were taxed individually. The Surrogate held that by the words "residence and its contents," the testator did not intend to include the farm acreage. The Appellate Division reversed, but the Court of Appeals subsequently reinstated the Surrogate's decision, holding as follows:
"[T]here is no evidence whatsoever that the farm acreage was used in connection with the dwelling plot or that testatrix ever regarded as part of her 'residence,' or as appurtenant to it, the acreage which her lessee had farmed for some 30 years."
Estate of Schermerhorn, 31 NY2d 739, 741 (1972). Here, there is no evidence that the Testator ever considered the Lot as property separate from her residence; or leased the Lot to a third party; or contemplated selling the Lot to a third party.
Based upon the foregoing, the only logical conclusion is that by the term "[m]y primary residence," the Testator's intent was to bequeath the Brownstone and Lot to Petitioner.
Request for Attorney's Fees
Petitioner requests an order assessing her legal fees in this proceeding against Objectant or his share of the estate; or in the alternative, for the fees to be paid out of the residuary estate. Given the facts in this construction proceeding, Petitioner's attorney fees shall be paid out of the residuary estate. (SCPA § 2302[6]; Matter of Greatsinger, 67 NY2d 177 [1986]; Matter of Ablett, 3 NY2d 261, 279 [1957].) The dispute raised by the Objectant cannot be characterized as utterly lacking a colorable argument, such that he should solely bear the Petitioner's attorney fees incurred in this proceeding. (See Greatsinger at 184; Matter of Hyde, 15 NY3d 179 [2010].)
Conclusion
Accordingly, Petitioner's motion for summary judgment is granted and Objectant's cross-motion is denied. Petitioner's application for construction of Article SECOND of the Testator's Last Will and Testament is granted, and the term "[m]y primary residence" shall include the Brownstone and Lot, bearing block number 939 and lot numbers 5 and 71, and known respectively as 107 6th Avenue and 95 Park Place in Brooklyn, New York. Further, Petitioner's attorney fees incurred in this proceeding shall be paid out of the residuary estate.
This constitutes the decision and order of the court.
Dated: March 14, 2024
Brooklyn, New York
HON. BERNARD J. GRAHAM
SURROGATE

Footnotes

Footnote 1:The Brownstone is block 939, lot 5 and known as 107 6th Avenue. The Lot is block 939, lot 71 and known as 95 Park Place.

Footnote 2:According to Objectant, among her accomplishments, the Testator was a Family Court Judge in Kings County for 20 years, a graduate of NYU School of Law, and a "sophisticated business woman."