## PRICE v. TALLY'S ADM'RS.

1. A father, by a deed made in Virginia, conveyed certain slaves to his daugh
ter, and son-in-law, during their lives, and at their death, " to be returned,
and delivered to the right heirs of said Polly Wood." The daughter and
son-in-law removed to this State, and died here without leaving children.
Held, that the law of this State, and not that of the State of Virginia, as-
certained who were the heirs of Mrs. Wood.

Error to the Circuit Court of Jackson.

DETINUE for a slave by the plaintiff in error.

This case was here at a previous term—5 Ala. Rep. 578.
The bill of exceptions sent up discloses, that the plaintiffs
claim an estate in remainder in certain slaves, as the heirs of
Polly Wood, under a deed as follows:

" Know all men by these presents, that I, Richard Price, of
Warren county, Tennessee, for and in consideration of the
natural love and affection I have for my daughter, Polly Wood,
I have bargained, sold and delivered to her a negro girl nam-
ed Mary, and her child named Patty, with the increase, to
have and to hold the said negro slaves during the natural life
of my said daughter, and her present husband Drury Wood,
or the survivor of them; and at the death of said Polly and
Drury Wood, the said negro slaves with their increase, are
to be returned and delivered to the right and legal heir, or
heirs of the said Polly Wood; it being the intention of this
instrument, to convey a life estate in said slaves to my said
daughter and son-in-law; and I do hereby warrant and de-
fend the said negro slaves, &c.; witness my hand and and
seal, this 4th April, 1810.          RICH'D PRICE, (seal.)

This deed was proved and recorded in the circuit or supe-
rior court of Russell county, Virginia, on the 24th April,
1810.

They also produced and read a transcript of the statute of

Price v. Tally's Adm'r.

frauds of Virginia, passed in 1787. They further read the deposition of Richard Price, the donor, from which it appears, that he resided in Virginia twenty-six years previous to October, 1809, when he moved to Tennessee; that he returned to Virginia in 1810, and whilst there, executed the deed for the slaves to his daughter and son-in-law. That they continued to reside in Virginia until 1812, when they moved to Tennessee, and lived there until 1820, when they moved to Jackson county, Alabama, where they resided until their death; Mrs. Wood dying in 1834, without children, and her husband in 1838. It was also in evidence, that the defendant purchased the slave under execution against Drury Wood.

The defendant also read the statute of descents of Virginia, passed in 1785, that the real estate of persons dying intestate without children or the descendants of such, should pass to the father. And read also the statute of distributions, passed in the same year, regulating the distribution of personal property of intestates, as lands are directed to descend.

Also, an act passed the same year, that an estate of freehold, or of inheritance, may be made to commence in future by deed, in like manner as by will.

Upon this proof the court charged the jury, that if they believed the facts above set forth to be true, the law was for the defendants, and they must find accordingly; to which the plaintiff excepted, and now assigns as error.

James Robinson, for plaintiff in error.

S. Parsons, contra.

ORMOND, J.—When this deed was before this court at a previous term, Price v. Price, 5 Ala. Rep. 578, we considered it to be a life estate in the husband, Drury Wood, with a contingent remainder to the heirs of the wife. The legal effect of the deed is materially changed by the proof made at the last trial of the cause. It now appears, that the deed was made in the State of Virginia, and that by a statute of that State, in force when the deed was made, it was provided, that an estate of freehold, or of inheritance, might be made to commence in future by deed, in like manner as by will. The effect of this change in the common law, is to give to this

conveyance by deed, the properties of an executory bequest, and to make those in remainder take as purchasers, instead of taking a mere contingent remainder, as they would do at common law, under the deed. As purchasers, their interest was vested, and could not be defeated by an alienation of the property by the tenant of the life estate ; consequently the sale under execution against Drury Wood, the tenant for life, was merely the sale of his life estate.

The counsel for the defendants in error does not controvert this, but he contends that the plaintiffs are not entitled to recover, because the statute of Virginia, where the deed was executed, makes the father the heir of persons dying intestate, without children, or the descendants of children, and that this action cannot be maintained, being brought by the brothers and sisters of the intestate, who, by the law of this State, are her heirs or distributees.

The rule of law here invoked is, that the law of the place where the contract is made, is to govern as to its nature, obligation and interpretation, which will follow it wherever it is attempted to be enforced, unless it is immoral or unjust, or unless its enforcement in such foreign State, would be contrary to its declared public policy, or to the interest of such State, or its citizens. [Story's Confl. of L. 201, and see most of the decisions on this subject collected in the notes in Andrews v. Herriott, 4 Cowen, 510.]

Of the binding efficacy of this rule, this case has already furnished an example, by the force of which the remainder men in this deed, have been declared to take a vested right as purchasers, when if the deed had been executed in this State they would have taken only on a contingent remainder. It is insisted, we must carry this rule of interpretation one step further, and determine, that whoever answers the description of the term " heir" of the tenant of the life estate, when the contingency happens, by the law of the place of the contract, is entitled to the property.

The terms, " right and legal heirs of Polly Wood," do not point to certain individuals as entitled to the remainder when the deed was made, but to such persons as should answer that description when the contingency happened, and to ascertain who they are, resort must be had to the municipal law

of some country, either of that in which the deed was made or of that in which the tenant for life was domiciled at the time of her death. If she had remained in Virginia, it cannot be doubted that the law of that State, at the time of her death, would have ascertained who was her heir, though it might have been different from the law at the time the deed was made; and this consideration is conclusive to show, that the law of Virginia, in existence at the date of the deed, directing the distribution of intestate's estates, did not enter into and form a part of the deed; and if it did not, with no plausibility can it be asserted, that the law of the domicil, must yield to the law of the place where the deed was made. It is a settled rule of law, that the succession to personal property is governed exclusively by the law of the actual domicil of the intestate at the time of his death. In the strong language of Lord Loughborough, in the case of Sill v. Worswick, 2 H. Black. 690, "it is a clear proposition, not only of the law of England, but of every country in the world, where law has the semblance of science, that personal property has no locality. The meaning of that is, not that personal property has no visible locality, but that it is subject to that law which governs the person of the owner. With respect to the disposition of it, with respect to the transmission of it, either by succession, or by the act of the party, it follows the law of the person. The owner in any country may dispose of his personal property. If he dies, it is not the law of the country where the property is, but the law of the country of which he was a subject, which will regulate the succession." See also Bruce v. Bruce, 2 B. & P. 229, and Story's Confl. of L. ch. 12.

Conceding then, that in the interpretation of this contract, it is to be governed by the law of the place where it was made, that interpretation is, that whoever answered the description of the legal heirs of Polly Wood, by the law of her domicil, at the time of her death, will be entitled to the remainder, without regard to the *situs* of the property. It would be a strange anomaly, if the courts of this State were compelled to explore the law of another country to ascertain who was entitled to the distribution of the personal property of one dying intestate here. The term " heir," is not techni-

cally applicable to personal property, but there can be no doubt of the sense in which the term was used, and that it was intended to indicate that person, or persons, who by law were entitled to distribution of an intestate's estate.

An argument has also been made, upon the language employed in creating this remainder, " and at the death of the said Polly and Drury Wood, the said negro slaves, with their increase, are to be *returned, and delivered* to the right and legal heir, or heirs of Polly Wood." This argument is founded upon the supposed designation of a particular individual, the father being at that time, by the law of Virginia, the heir at law of his child, dying intestate, and without children, with which it is assumed he was acquainted, from his long residence there previously, though he then resided in Tennessee. This presumption, derived from the employment of the word "returned," is entirely too remote and far-fetched to be the basis of any satisfactory judgment. The argument indeed proves entirely too much. If we could suppose the father contemplated the possibility of outliving both his daughter and her husband, and that she would die childless, and intended in that event to secure the reversion to himself, it is singular he should have employed so much circumlocution, and involved it in so much doubt, when it would have been so easy to have said, it shall be returned to me and my heirs. Nor is it less singular upon that hypothesis, that having himself only in view, he should have spoken in the plural of the heirs of Polly Wood. We cannot doubt that he meant what he said, in language sufficiently intelligible, though not expressed in words technically accurate.

The result to which we have come, renders it unnecessary to consider the question made in the court below, upon the admission of testimony, as those questions will be wholly unimportant in another trial of the cause, the purchasers under the executions of Drury Wood, having the right to the life estate vested in him by the deed.

Let the judgment be reversed and the cause remanded.