## COUCH ET AL. *vs.* ANDERSON.

1. Deed of gift of a slave, " to my daughter L. during her natural life, and at her death to her child or children ; but, in case of the death of my said daughter without lawful issue of her body, then the said negro, and her issue or increase, *to return and belong to my other heirs:"* *Held*, that the term "heirs" was a word of limitation, and not of purchase ; and that therefore, upon the death of L. without issue, living the grantor, his other surviving children, who were born before the execution of the deed, took nothing under it.

APPEAL from the Circuit Court of Cherokee. Tried before the Hon. THOS. A. WALKER.

DETINUE by Robert Couch, John Couch, William Couch, Sidney Couch, William Baker and Eleanor, his wife, Harvey Hendrix and Margaret, his wife, Spencer Stegall and Mary his wife, Alexander Orr and Malinda, his wife, and William M. Jamison and Dorcas, his wife, against Harvey Anderson, for two negroes, a boy named Guilford, and a girl named Lucy.

The plaintiffs claimed under a deed of gift from their father, John Couch, dated in February, 1824, of which the following is a copy:—

" STATE OF SOUTH CAROLINA, {  Know all men by these pre-
          Pendleton District.      }  sents, that I, John Couch, of the same State and district, for and in consideration of the natural love and affection which I bear my daughter Lucinda, now the wife of Thomas Montgomery, have given and granted unto my said daughter Lucinda, during her natural life, and at her death to the child or children of my said daughter, a certain negro girl named Mary Eleanor, about seven years of age, together with the future issue and increase of the said slave; but, in case of the death of my said daughter Lucinda without lawful issue of her body, then the said negro girl, and her issue or increase, to return and belong to my other heirs. And I do hereby bind myself to warrant and defend the said negro girl, together with her issue or increase, to my said daughter Lucinda, as above mentioned, against myself, or any other person or persons lawfully claiming the same. Given under my hand and seal," &c.

On the trial of the cause, the parties entered into an agreement, by which they admitted these facts : That a copy of the deed might be used as the original, the due execution and delivery of which were admitted; that the grantee in said deed, Lucinda Montgomery, died in 1851, before the commencement of this suit, never having had any child or children; that the negroes sued for are the children of the negro girl mentioned in said deed; that said girl was sold in the lifetime of said Lucinda Montgomery, by the sheriff of Greenville district, South Carolina, to satisfy an execution against her husband; that notice of said deed was publicly

given at said sale, and that the defendant claims under said sale ; that said deed was duly recorded in the proper office in South Carolina ; that said John Couch, the grantor, is still living ; that plaintiffs are the only living children of said John Couch, and were born before said deed was made ; that the value of the negroes sued for is $500 each, and that defendant was in possession when the suit was brought.

"No other proof being offered than said agreement and deed, and there being no conflict in the proof, the court charged the jury, that if they believed the proof, they should find for the defendant ; to which charge the plaintiffs excepted," and which they now assign for error.

WHITE & PARSONS, for the appellants :

By the terms of the deed, Lucinda Montgomery took an estate for life in the slave Mary Eleanor, and her child or children, if she had any living at her death, the absolute estate ; but, if no such child was living at her death, or if she never had any such child, then, at her death, the property vested in the "other heirs" of the grantor.—Darden's Adm'r v. Burns' Adm'r, 6 Ala. 365; McGraw v. Davenport, 6 Port. 327 ; Powell v. Glenn, 21 Ala. 458 ; Flinn v. Davis, 18 ib. 132 ; Williams v. Graves, 17 ib. 62 ; Woodley v. Findlay, 9 ib. 716 ; Keating v. Reynolds, 1 Bay's R. 80.

The words "heirs" and "heirs of the body," when applied to personal estate, have been sometimes held to be synonymous with "children."—Jarman on Wills, 2d vol., m. p. 73 ; Powell v. Glenn, 21 Ala. 466 ; Doyle v. Bouler, 7 ib. 246 ; Fellows, Wadsworth & Co. v. Tann, 9 ib. 999 ; Williams v. Graves, 17 ib. 62 ; Dunn v. Davis, 12 ib. 135 ; Hodgeson v. Bussey, 2 Atk. 89 ; Wright v. Jesson, 5 M. & S. 98 ; Bowers v. Porter, 4 Pick. 208 ; Goodright v. White, 2 W. Black. 1010 ; Doe v. Lawson, 3 East's R. 278.

The strictness of the ancient rule, as to repugnancy in deeds, is much relaxed. The intention is to be gathered from the whole instrument, rather than from particular clauses seemingly repugnant.—McWilliams v. Ramsay, 23 Ala. 813 ; Hamner v. Smith, 22 ib. 433. The modern rule is, to give effect to the whole and every part of the instrument, whether it be a will, deed, or other contract—to ascertain the general

intention, and permit it, if agreeable to law, to overrule the particular.—Greenleaf's Cruise, vol. 4, tit. 32, ch. 12; Story on Contracts, § 659. In the construction of wills (and it is insisted, under the authorities above cited, that the same principle applies to deeds) the courts always look to the intention as the polar star to guide them.—Gulliver v. Poyntz, 3 Wils. 141; Smith v. Bell, 6 Peters 84.

A contingent remainder in personal property, after a life estate, may be created by deed.—Williamson v. Mason, 23 Ala. 488; Price v. Price, 5 ib. 580. The rule in Shelley's case enlarges the estate of the first taker, only when his heirs general, or the heirs of his body, take by descent from him, and not as purchasers. Here, the life estate of the wife vested in the husband and his heirs, and the line of legal descent is different from those who take under the deed; and the rule, therefore, cannot apply.—Cases cited above.

In regard to personal estate, it seems clear, that words denoting a failure of issue, following a bequest to children, refer to the objects of that gift.—2 Jarm. Wills, m. p. 363.

John T. Morgan, with whom was John Foster, contra:

1. The deed speaks from the time of its execution, and must at that time define all the interests created by it. Even if the words "my other heirs" mean "my other children," it is uncertain whether the donor meant his other children then living, or those living at the death of the first taker without issue living at her death; and in this state of uncertainty, a well-settled rule of construction (Isbell v. Maclin, 24 Ala. R. 315) intervenes, and provides that they shall take as heirs, or by representation, and not by descent. In this state of uncertainty, it cannot be said that the deed creates and defines the estate which the other children would take.

2. In this view, also, it seems clear from the context, as well as from the use of the term heirs, that the donor intended, at the determination of the particular estate, (if an estate tail is not created,) that a reversionary interest would fall back to his estate, and would then pass to his other heirs, whoever they might be; for, doubtless, he expected that he would not survive his daughter and her children, and he provided accordingly.—Keyes on Chattels, § § 59, 300.

3. The term "heirs," when used in a gift or bequest of personal chattels, always means "next of kin ;" and to ascertain these, we must leave the deed or will, and look to the statute of distribution for the definition of the term. This proves that the " heirs" cannot take under the deed alone as purchasers, but under the statute by representation.—Eddings v. Long, 10 Ala. 203 ; Malcolm v. Taylor, 2 Russ. & M. 416 ; Kay v. Connor, 8 Humph. 624.

4. The remainder to the " heirs" of the donor, upon a contingency, might be good, because he might be dead when the particular estate determined ; but, if it should happen that the donor is still living at the determination of the particular estate, then the limitation over is at end : like all other contingent remainders, it is defeated if the person intended to be benefited cannot take when the contingency happens.—2 Black. Com. p. 136.

5. The limitation over is void for uncertainty, and also for remoteness.—Dunn v. Davis, 12 Ala. 135; Keyes on Chattels, p. 136.

6. The donor seems to have studied to find terms which would avoid a *designatio personarum*, and to select words which would embrace indefinitely a class of persons who could take as heirs or as purchasers.

GOLDTHWAITE, J.—The only question presented on the record is, as to the construction of the deed executed by John Couch, by which he conveyed a negro to his daughter, a married woman, " for life, and at her death to her child or children ; but, should she die without lawful issue of her body, then said slave to return and belong to my other heirs." It was admitted on the trial, that the plaintiffs below were the children of the grantor, born before the execution of the deed; that the daughter of the grantor died without having had any children, and that the grantor was still living.

Waiving the question, whether the words " child or children," used in the first part of the deed, are words of limitation, or of purchase, and conceding, for the purposes of the argument, that they are the latter, the question then is, as to the effect of the limitation over to the " *other heirs*" of the grantor. The word *heirs*, without explanation, is always

Couch et al. v. Anderson.

construed as a word of limitation, and must be taken as such
in the present case, unless it is apparent from the other parts
of the deed that it was used in a different sense.   The argu-
ment on the part of the appellants is, that as by the terms of
the deed, the daughter takes for life, and on her death with-
out children, the property is to "belong to the *other* heirs" of
the grantor, the use of the word "other" qualifies the general
meaning of the term "heirs" to which it refers, and shows
that the grantor did not intend to use that word in its ordi-
nary sense, but applied it to persons standing to him in the
same relation as his daughter.   It is possible that the gran-
tor meant this ; but we think it more probable, from the use
of the word "return," taken in connection with the words
which immediately follow it, that, in the event his daughter
died without children, his intention was, that the property
designed for them should come back, and pass as if no con-
veyance had been made.   Presuming, as was very natural,
that he should die before his daughter, his first object was, to
make provision for her during life, and at her death for her
children ; if, however, she should have no children, then the
property designed for them was to return and pass to his
other heirs.   Such a disposition is in accordance with the
feelings and affections of most men, and in expressing his
intention, he merely expressed what the law would do.   Our
conclusion is, that there is nothing in the deed which shows
that the word "heirs" was used in a different sense from that
which the law ordinarily attaches to it, and being therefore a
word of limitation, his children could not take under the
deed.

Judgment affirmed.