Matter of the Judicial Settlement of the Account of Proceedings of FRANCIS S. PHRANER and Others, as Executors and Testamentary Trustees under the Last Will and Testament of GEORGE G. LAKE, Deceased.

(Surrogate's Court, New York County, November, 1919.)

Wills — construction of — accounting — executors and administrators — trusts — when future estate vests — remainders — — usury — pleading — life     tenants — evidence — Decedent Estate Law, §§ 90, 98.

Testator who had married thrice left his widow and five children and directed that his residuary estate should be divided into as many separate equal shares as he should leave children him surviving and made similar provisions and directions in regard to each of such shares. One of said shares, which is typical of the others, was devised and bequeathed to the executors in trust with direction to pay one-third of the net income to the widow and the other two-thirds to his son G. by the second wife, during their respective lives. The will also provided, should G. survive the widow, that "from and after" her death the whole of the rents, interest, income and profits should be paid to G. during his life but if she survived him, that "from

Surrogate's Court, New York County, November, 1919.    [Vol. 109.

and after " his death, two-thirds of said income should be paid
to his lawful issue, if any, or if there were none to testator's sur-
viving children in equal shares, but in case any of his other
children should in the meantime have died leaving lawful issue
then such income was directed to be equally divided among his
children and their lawful issue *per stirpes* and not *per capita*,
and " from and after " the death of both the widow and G. said
share was devised and bequeathed to the heirs of G.

G. died without issue soon after the testator, leaving him sur-
viving half brothers and sisters as his only next of kin, all of
whom were children of the testator except J., a son of his second
wife by a former husband, who made an assignment of his in-
terest in the estate and died survived by eight children. A half
sister of G. survived the testator but predeceased testator's
widow. The other children of the testator are still living.
Upon the judicial settlement of the account of the executors of
testator, to which proceeding the legal representatives of the
assignee of J.'s interest in the estate were cited, *held,* that the
future estate in the share set apart for G. vested upon his death,
at which time his heirs at law took the realty and his next of
kin the personalty, being in this case the same persons, and as
J., who took directly under the will of testator, was, under
sections 90 and 98 of the Decedent Estate Law, both an heir
at law and next of kin of G., he was entitled to participate
in the remainder devised and bequeathed upon the death of
G., and the title of J.'s assignee is a necessary issue in this
proceeding.

While the surrogate upon the judicial settlement of the ac-
count of an executor has jurisdiction to pass upon the validity
of an assignment of an interest in the estate a mere allegation
that the assignment was usurious will not suffice; the issue
must be properly raised and the answers which allege usury
should be served with cross notice upon the other parties who
may be affected by a final adjudication of that issue.

The operation of the will upon the object of testator's
bounty presenting no latent ambiguity, though he used tech-
nical terms in the instrument, evidence to show that to his
knowledge G. was in ill-health when the will was made, that
J. did not visit the testator for some time before it was exe-
cuted, and that testator never referred to him in the presence
of his family, is not in explanation of the will but only tends
to contradict it, and is therefore inadmissible.

Misc.] Surrogate's Court, New York County, November, 1919.

PROCEEDINGS upon the judicial settlement of 'the accounts of executors.

John T. Hancock (John T. Hancock, of counsel), for petitioners.

Theron L. Carman, for Elizabeth Steers, as executrix, and others.

Kenneth B. Halstead, for executors of estate of John H. Seed, deceased.

Arthur L. Livermore (George L. Shields, of counsel), for James R. S. Lake.

Rosendale & Dodd (George Rosendale, of counsel), for Zoe C. Price, Lorraine Price and Zoe C. Price, as administratrix.

Frank B. Washburn, special guardian.

FOWLER, S.   This is an interesting case, and several points of practice are novel in this court.   Before a distribution of the estate of testator, George G. Lake, may be ordered in this proceeding, it becomes necessary to consider the meaning and effect of paragraph fourth of the will.   Testator therein provided that his residuary estate should be divided into as many separate, equal shares as he should leave children surviving, and he made similar provisions and directions in regard to each share.   The provision in favor of the testator's son, George S. Lake, is typical of the others. The only controversy centres about the trust created for his benefit.   It is quoted in full, as follows:   " I give devise and bequeath one other of said six shares to my executors and trustees hereinafter named in trust

19

to invest and keep the same invested during the lives of my wife Frances E. Lake and of my son George Steers Lake in such property and securities as they may think best and from time to time to. change manage and control the said investment at their discretion to collect and receive the rents interest income and profits arising from or growing out of the same and to pay one equal third part of the net rents interest income and profits so received by them (semi-annually or quarter-yearly as the same shall be received) to my wife Frances E. Lake during her life and the other two-thirds thereof to my said son during his life. Should my said son survive my wife then and in that case from and after the death of my wife to pay the whole of said rents interest income and profits to my said son during his life. Should my wife survive my said son then and in that case from and after the death of my said son to pay the said two-thirds of said income to his lawful issue if any, or if there are none to my surviving children in equal shares but in case any of my other children shall in the meantime have died leaving lawful issue then such income shall be divided equally among my children and the lawful issue of my children *per stirpes* and not *per capita.* From and after the death of both my wife and my said son I give devise and bequeath the said share to the heirs-at-law of my said son.''

The testator was survived by five children and his widow. The widow died only recently, in January, 1919. Shortly after the death of the testator, in 1884, George S. Lake died without issue, but leaving him surviving half brothers and sisters as his only next of kin. In the interim between the death of George and that of his mother there have been several changes by death among these half brothers and sisters. All of them

were children of the testator, with the exception of James Waterbury Steers, who was a stepson of the testator. The testator married thrice, and James Waterbury Steers was a son of his second wife by a former husband. George S. Lake, above referred to, was a son of the testator by this second wife. James Waterbury Steers died in October, 1905, survived by eight children. He had made an assignment to J. H. Seed, whose legal representatives are cited, of all of his interest in the above named estate. Mary Thompson, a half-sister of George S. Lake, also survived testator and also predeceased Mrs. Lake. The other children who survived the testator are still living. Now that the widow is dead, the share set apart for George S. Lake is to be distributed. If it vested upon the death of George, either the legal representatives or the assignee of James W. Steers would share. On the other hand, if vesting was postponed until the death of Mrs. Lake, the children of James W. Steers will take and not his legal representatives or assignee.

It is contended that no matter when the estate vested James W. Steers should not be allowed to participate in the share bequeathed to George, for the reason that the testator used the term "heirs at law" in a restricted sense to mean only those of his own blood. The executrix of James W. Steers and also the latter's children raise the further claim that the assignee (Seed) can have no title because the assignment was made upon usurious consideration.

The future estate in the share given to George S. Lake vested upon his death. There is neither expression nor indication in the will of a contrary purpose. The preference of the law for a construction which favors vested future estates must be indulged. The use of the words " from and after " do not cause

a postponement of the vesting until the death of the widow. *Connelly* v. *O'Brien,* 166 N. Y. 406; *Hersee* v. *Simpson,* 154 id. 496; *Matter of Van Kleeck,* 95 Misc. Rep. 40; affd., 177 App. Div. 917; *Matter of Myers,* 98 Misc. Rep. 108; *Matter of Lowerre,* 104 id. 570. There is nothing which points to the application of the " divide and pay over rule." There are words of direct gift; thus we are saved the perplexity of applying that rule. The interposition of a trust does not prevent vesting. *Matter of Van Kleeck, supra.*

The testator could in no better way have stated that he created a trust to last during two lives and that the remainder interest belonged to the heirs at law of George. It is not material in this present proceeding to determine whether or not the estate vested at once upon the death of the testator. That question is at present academic and will not be decided. *Matter of Shrier,* 103 Misc. Rep. 132, and cases cited. It suffices to determine whether the estate vested upon the death of George or later upon the death of Mrs. Lake.

If we heed, as we must, the rule that an entire will is to govern interpretation, an examination of the entire will discloses no reason for a different conclusion from that which the surrogate has reached. In paragraph sixth of the will the testator provides: " In the event of either of my said children dying before me and leaving lawful issue, then the rents, interest, income and profits herein given to such child shall go to said issue in equal shares and my said trustees shall hold in trust the share which would have come to the issue of such child at the death of my said wife for and during the lives of my said wife and the youngest child of such issue living at the time of my death, and upon the death of my wife and said youngest child of said issue my said trustee shall pay over the principal of said share

to the heirs at law of my said child." This provision in the case of children predeceasing testator, and leaving issue them surviving, is somewhat different from the former provision in favor of living children. A longer trust term is limited. Instead of making it terminate with the lives of the child and the widow, the testator provided that the term shall last during the lives of the widow and the youngest issue surviving him. The remainder interest is not given in words of direct gift. The trustees are directed to pay over the principal of the respective shares. This may perhaps be deemed some indication of a purpose to postpone vesting until the death of the widow under the " divide-and-pay-over rule." That point it is not now necessary to determine. All the shares which have been created are for the benefit of children who actually survived the testator. Paragraph sixth has consequently not been called into operation. Even if the testator had intended a future interest contingent upon the widow's death in this particular paragraph, it would not follow that the testator intended a like result in the earlier paragraph of his will. He might very well expect to give a different future estate where children survive than was intended in the instance where only their issue survive. He created a longer trust term in the latter instance and he may not have been so anxious about the nature of the interest bequeathed to heirs at law. At the termination of the longer trust term where only issue survive, heirs at law were not likely to include issue, but only collaterals of the deceased child. At the death of the widow, and of any of the children who survived the testator, heirs at law would very probably include issue. Very well may the testator have felt greater concern for issue of any child than for collateral relatives. Apart from such

Surrogate's Court, New York County, November, 1919.    [Vol. 109.

conjecture, the words of gift in the fourth paragraph of the will are repeated in identically the same language in six instances. The mere change of phraseology in the sixth paragraph, if explicable on no other ground, must be regarded as inadvertence.

Furthermore, if the class of heirs at law is to be deemed fixed only after the deaths of both the widow and George S. Lake, the language of the testator was not appropriate. The widow's death does not in any way determine the heirs at law of George. Were it desired not to close the class before her death the provision would have no doubt been differently expressed. The term " heirs " has been held to include heirs presumptive (*Montignani* v. *Blade,* 145 N. Y. 111), in order to accelerate vesting. Here the converse would have to hold. " Heirs " would have to be determined long after the demise of the ancestor, and this in order to work a postponement in the vesting.

In *Salter* v. *Drowne,* 205 N. Y. 204, the words " heirs at law " and " next of kin " were deemed to mean those who would have inherited by intestate succession had their ancestor survived until the period of distribution. The reason there found controlling was an intention not to give the life tenant, an heir at law and next of kin, any remainder interest. In order to exclude her it was held that the class of remaindermen was to be fixed only after the termination of the life estate. Paragraph fourth of our testator's will does not present such a situation. The term " heirs at law " might perhaps be construed as it was in *Salter* v. *Drowne.* But this is not so with paragraph fourth.

Upon the death of George S. Lake those who were his heirs at law took the realty, and those who were his next of kin took the personalty. It happens that they were the same persons. It is immaterial that the

testator used the term " heirs at law " in referring to those who should succeed to the personalty. The term is often used interchangeably with next of kin. . *Doctor* v. *Hughes,* 225 N. Y. 305, 313; *Montignani* v. *Blade, supra; Lawton* v. *Corlies,* 127 N. Y. 100, 106. James W. Steers must be included to participate in the remainder bequeathed upon the death of George. Though not of the blood of the testator, he was both heir at law and next of kin of George. Decedent Estate Law, §§ 90, 98. The words are in no way limited. They must be applied in their technical sense. *Johnson* v. *Brasington,* 156 N. Y. 181. As James takes directly from the testator under the will and not from George, it matters not that James W. Steers is not of the blood of the testator. The statute has no application. *Stack* v. *Leberman,* 169 App. Div. 92.

The interest of James W. Steers was vested when he assigned to Seed. The title of the latter is therefore a necessary issue upon this accounting. Usury is alleged, but no proof of usury has been offered. This cause, therefore, is not ripe for complete determination. The surrogate has jurisdiction to pass upon the validity of the assignment and the existence of usury (*Matter of Thornburgh,* 72 Misc. Rep. 619; *Matter of Dollard,* 74 id. 312), but the issue should be raised properly.

The mere allegation in the papers of the existence of usury does not suffice. In the Supreme Court, where codefendants seek relief as between themselves, their answers are served upon their codefendants in accordance with the old equity practice. Code Civ. Pro. § 521. This practice should be followed here. Code Civ. Pro. § 2519. The surrogate therefore directs that the respondents who urge usury in their answers should serve their pleadings with cross-notice upon the other

parties who may be affected by a final adjudication of that issue. The issue may then be set down for a hearing at some subsequent term. Let the answers setting up usury be so served on or before November thirtieth next.

There is another question raised: After the cause was first submitted the petitioners moved for leave to offer extrinsic proof to aid in the interpretation of the will. At the hearing noticed by them, petitioners offered to prove that George was in ill health when the will was made and that the testator knew this, and further that on the other hand James W. Steers did not visit the testator for some time before the will was made and that the testator never referred to him in the presence of his family. This evidence, it is claimed, tended to show that the testator did not intend to include James amongst the heirs at law of George. The use of parol or extrinsic evidence in interpreting wills has been definitely limited. *Matter of Lummis,* 101 Misc. Rep. 258; *Matter of Farmer,* 99 id. 437, and cases therein cited. There must first be found an ambiguity not resolvable from the will. *Matter of Vosseler,* 89 Misc. Rep. 674; 170 App. Div. 10; 220 N. Y. 225. Here the terms used by the testator are technical. The evidence offered cannot explain the testator's meaning. It can only contradict it. There is no patent ambiguity. The operation of the will upon the objects of the testator's bounty presents no latent ambiguity. The extrinsic evidence of the petitioners affords no assistance whatever in interpreting the will. Ordinarily the court need not rule upon an offer of proof. *Matter of Potter,* 161 N. Y. 84. Here, however, there is no danger of erring. The ruling I made upon the hearing on this point will be adhered to.

The decree will award distribution of the share set

apart for George in paragraph fourth, one-fifth to each of the three surviving children of the testator, one-fifth to the administratrix of Mary L. Thompson and the remaining one-fifth to either the executrix of James W. Steers or the executors of John H. Seed, depending upon who prevails upon the trial of usury.

A proposed decree may be prepared in conformity with this opinion, to be served and settled, on due notice before me. The proposed decree should contain a provision for thereafter inserting at the foot thereof by way of supplement the results and effect of the aforesaid trial of the issue of usury. Such insertion at the foot of my decree may be made by my successor, without disturbing or affecting the portions of my decree which construe the will of George G. Lake, deceased.

Decreed accordingly.