185 So. 897

### WILCOXEN v. OWEN et al.

### 4 Div. 55.

Supreme Court of Alabama.

Dec. 22, 1938.

Rehearing Denied Feb. 2, 1939.

Moseley & McIlwain and Cope & Cope, all of Union Springs, and Rushton & Rushton, of Montgomery, for appellant.

T. S. Frazer, of Union Springs, and Steiner, Crum & Weil and Sam Rice Baker, all of Montgomery, for appellees.

GARDNER, Justice.

Howell L. Peebles, in January 1878, was the owner of certain described lands in Bullock County, Alabama. He died in March 1919, leaving a last will, which has been duly admitted to probate. His widow, Willie W. Peebles, survived. No child was ever born of this union, but in April 1900, he legally adopted a child, then eight years of age, under the name of Howell Peebles Wilcoxen. Peebles at the time of his death had no parents, no grandparents, no brother nor sister, niece nor nephew living. The widow, Willie W. Peebles, died in March 1936, without issue having been born of her marriage with Howell L. Peebles.

These complainants, his cousins, constitute his next of kin in blood relationship. They claim title to the lands here involved under a deed (and we think it clear that it is a deed and not a will—Graves v. Wheeler, 180 Ala. 412, 61 So. 341; Self v. Self, 212 Ala. 513, 103 So. 591) executed in January 1878, which appears in the report of the case. The proper construction of this deed presents the vital question here for determination.

Under the terms of the will (also, in pertinent part, appearing in the report of the case) Peebles devised the reversion in the realty described in the deed to defendant Howell Peebles Wilcoxen, but complainants insist the deed of 1878 takes precedence over the will, and the chancellor accepted this theory of the case.

Complainants' contention is succinctly stated in the sixth paragraph of the bill, as follows:

"That said deed created a life estate in and to the property described therein in Willie W. Peebles, grantor's wife, with contingent remainder in such child or children as were born to her by him, with gift over, in the event his wife survived him, to his next of kin. That on the death of said Howell L. Peebles, childless, his next of kin, at the time of his death, took a vested remainder in said property, and upon the death of his wife, the life tenant, the next of kin of said Howell L. Peebles at the time of his death (and the respective heirs of those then deceased) took a fee simple estate in and to said lands."

On the other hand defendant contends that under the language of the deed, which must be interpreted in the light of the common law, there was in fact no remainder interest in these complainants, but that the estate created was one in reversion, capable of subsequent disposition by the grantor as was done in the execution of the will which should be held to prevail.

Our study of the authorities has led us to the conclusion that this is the better view. The prime purpose here, of course, is to ascertain the intention of the grantor, which must control. Section 6921, Code of 1923; Section 2187, Code of 1876; Long v. Holden, 216 Ala. 81, 112 So. 444, 52 A.L.R. 536; Dickson v. VanHoose, 157 Ala. 459, 47 So. 718, 19 L.R.A.,N.S., 719; 18 Corpus Juris 311. The deed is to be construed by the common law, as we are aware of no controlling statute. The statute abolishing the Rule in Shelley's Case (Sec-

tion 2183, Code of 1876, Section 6907, Code of 1923) is without application.

 This was pointed out by the Tennessee Court in Robinson v. Blankenship, 116 Tenn. 394, 92 S.W. 854, where the court, speaking of an act abolishing the Rule in Shelley's Case, in all respects similar to our own, said [page 855]: "The operation of that act, however, by its terms is confined to a case where a remainder is limited to the heirs, or the heirs of the body of a person, to whom a life estate in the same premises is given. There has never been a statute passed in this state affecting the other common-law rule which in a case like the present, where the testator or grantor disposing of a life estate, in terms, seeks to create a remainder in his own heirs, lets these heirs in upon the termination of the life estate, as reversioners rather than as remaindermen."

We think this language equally applicable here, and that neither the above noted statute nor section 2180, Code of 1876, section 6902, Code of 1923, nor any other statute of our State affects the common law rule referred to by the Tennessee court. This common law rule recognized and applied by the Tennessee court in the above authority is correctly therein stated as appears from an examination of both textbooks and decided cases.

 In Section 1525, Vol. 2, Washburn on Real Property, 6th Ed., the author states the rule as follows:

"At common law, if a man seised of an estate limited it to one for life, remainder to his own right heirs, they would take, not as remaindermen, but as reversioners; and it would be, moreover, competent for him, as being himself the reversioner, after making such limitation, to grant away the reversion. And where he made the limitation after a life estate to his own heirs by will, they took as reversioners, and not as purchasers."

And in 18 Corpus Juris 310, the following:

"At common law, the rule is that, where a person conveys a life estate to another with remainder to the heirs of the grantor, they take, not as remaindermen, but as reversioners, and the grantor being himself the reversioner after such limitation he may grant away the reversion. A deed creating a remainder in fee, to vest contingently in some person not in esse, on his coming into being, providing for the reversion of such remainder to the grantor or his heirs in the event the contingency does not occur, does not divest the grantor of the fee of such contingent remainder; and the contingent interest will not be deemed to be in abeyance, but to remain with the grantor, subject to be divested on the happening of the contingency."

And among the exceptions to the fourth class of contingent remainders considered in 21 Corpus Juris 984, is "a remainder limited to the heirs of the grantor." The cases of Akers v. Clark, 184 Ill. 136, 56 N.E. 296, 75 Am.St.Rep. 152, Mayes v. Kuykendall, Ky., 112 S.W. 673, and Robinson v. Blankenship, supra, restate and apply this rule. In this latter authority, the opinion makes reference to the exception above referred to and quotes from Vol. 24, page 398, Am. and Eng.Ency. of Law, as follows:

"An exception to contingent remainders is where the remainder is limited to the heirs of the grantor. This exception rests on the principle that, while such a limitation is designated as a remainder, it is not a remainder at all, but is an estate which continues in the grantor as the reversion in fee."

 But our own Court in Due v. Woodward, 151 Ala. 136, 44 So. 44, gave application to this common law rule. There the grantor conveyed to his wife a life estate in the land, with the added proviso that upon her death the property "shall revert" to him, and in the event of his prior death, "to his lawful heirs." [page 45.] The holding was that the grantor merely, by the use of this language, directed the course of descent from him as ancestor to his lawful heirs and that the property should descend according to the statute of descent in this State in force at the time, and that his lawful heirs should inherit from him as ancestor. A deed subsequently executed to a purchaser was held valid as against the claim of title of the grantor's only surviving child.

 Among other cited authorities is that of Couch v. Anderson, 26 Ala. 676, a case likewise here much in point, and in which it was noted that the word "heirs", without explanation, is always to be construed as a word of limitation and not of purchase.

The cases of Robinson v. LeGrand & Co., 65 Ala. 111; May v. Ritchie, 65 Ala. 602; Terrell v. Cunningham, 70 Ala. 100;

Graves v. Wheeler, 180 Ala. 412, 61 So. 341; Wilson v. Ward, 224 Ala. 147, 138 So. 826, cited by complainants, are not in conflict, and do not militate against the conclusion here reached.

 In the Robinson Case, supra, the Court in construing the deed placed controlling emphasis upon the words "now in force," and that of May v. Ritchie, supra, concerned a deed executed before the statute abolishing the Rule in Shelley's Case, and in which the word "children" was used, essentially a word of purchase and not of limitation, as likewise pointed out in Graves v. Wheeler, supra. The devise over to the next of kin in Terrell v. Cunningham, supra, had reference to the next of kin of the first taker, and not of the grantor, a distinction which must be kept in mind, as the underlying principle upon which the common law rule rests is that when the same quality and quantity of estate is devised that the devisee would have acquired by descent, the title passes by descent and not purchase. Gilpin v. Hollingsworth, 3 Md. 190, 56 Am.Dec. 737. In Wilson v. Ward, supra, the holding merely was to the effect that upon consideration of the whole will, the words "heir of the body," in that particular case, were words of purchase and not of limitation. These words are sometimes so used (8 Corpus Juris 1134), and it is a question of intention. 29 Corpus Juris 299. And their first use in the quoted paragraph of the will had reference to the bodily heirs of the first taker. There is nothing in the opinion that runs counter to the common law rule that the word "heir" in the natural signification is a word of limitation (29 Corpus Juris 296) describing the estate given and not the persons who are to take. Nor did the result of that decision turn upon any consideration of this rule, as disclosed by the opinion.

But it is insisted this common law rule is here inapplicable as the language of this deed is not "heirs" or "lawful heirs," but the grantor has used the words "next of kin," which it is argued has reference to a class, the blood relations of the grantor who took a contingent remainder as purchasers.

 True, technically these words mean nearest in blood relationship, but in statutes of distribution, "reckoning according to what may be termed the priorities of such statutes, 'next of kin' implies those entitled to the property of an estate, whether they in fact be any blood relationship or not." Pinkston v. Semple, 92 Ala. 564, 9 So. 329, 330; 46 Corpus Juris 473–475. Much depends upon the context as indicated in Pinkston v. Semple, supra, just as the word "heir" in Price v. Tally's Adm'rs, 10 Ala. 946, though technically not applicable to personalty, was so applied. And the cases disclose that the words "heir" or "heirs at law" have been used interchangeably with the words "next of kin." "While the term 'next of kin' is distinguishable from 'heir' and 'heir at law,' it may be used as the equivalent of 'heir' and 'heir at law.'" 46 Corpus Juris 475, 476. "It is immaterial that the testator used the term 'heirs at law' in referring to those who should succeed to the personalty. The term is often used interchangeably with 'next of kin.' Doctor v. Hughes, 225 N. Y. 305, 313, 122 N.E. 221." In re Phraner, 109 Misc. 287, 178 N.Y.S. 768, 772. And in Dickason Coal Co. v. Liddil, 49 Ind.App. 40, 94 N.E. 411, is the observation [page 413]: "At common law the chief practical difference between next of kin and heirs at law is that the former take the personal property by distribution, and the latter the real estate by descent. But under our statutes of descent, no such distinction is recognized, and the heirs at law are also the next of kin." See, also, 29 Corpus Juris 302. And in Leavitt v. Dunn, 56 N.J.L. 309, 28 A. 590, 44 Am.St.Rep. 402, after citing a number of decisions of the New Jersey court, it was said: "In the opinions delivered in these cases the phrase 'next of kin' is frequently used by the judges as their synonym for the word 'heirs' in the disposition of personal property." In New York Life Insurance Co. v. Winthrop, 237 N.Y. 93, 142 N.E. 431, 31 A.L.R. 791, the court speaking through Justice Cardozo, said [page 433]: "We think a gift to 'heirs' or 'next of kin' is the same in meaning and effect as one to 'legal heirs' or 'legal next of kin,' and that one as much as the other imports a reference to the statute." Speaking of the word "heirs" as one of limitation and not purchase, the Missouri court in Garrett v. Wiltse, 252 Mo. 699, 161 S.W. 694, made the following comment [page 696]:

"Words of limitation, in this technical sense, mean words 'which do not give the estate imported by them originally to the heirs * * * described, or to whom they are expressly directed, but only extend the ancestor's estate * * * to an

estate of inheritance descendible to the heirs described. * * *' Fearne on Rem. 77. And on page 78: 'When the word "heirs" * * * operates only to expand an estate in the ancestor, so as to let the heirs described into its extent and entitle them to take derivatively through or from him, as the root of succession, or person in whom the estate is considered as commencing, they are properly words of limitation; but when they operate only to give the estate imported by them, to the heirs described, originally and as the persons in whom that estate is considered as commencing, and not derivatively from or through the ancestor, they are properly words of purchase. * * * In general, words of purchase are those by which, taken absolutely without reference to or connection with any other words, the estate first attaches or is considered as commencing in the person described by them, whilst words of limitation operate by reference to or connection with other words and extend or modify the estate given by those other words.'

"Undoubtedly the words 'and heirs' may be used in deeds and wills in the sense of sons, daughters and children, etc. (that is, as words of purchase), when the context demands such construction, but the burden is thrown upon him who contends they are words of purchase to rebut the presumption that they are used as words of limitation (i. e., as intended to mean not individuals but quantity of estate and descent), which in a fixed legal sense they import, and the intent not to use the words in their legal and fixed sense must be unequivocal and not to be misunderstood."

It is clear enough, therefore, that there is ample authority to the effect that the words "heirs" or "heirs at law" and "next of kin" are orten used interchangeably, even in judicial opinions as well as common parlance; and, as applied to the instant case, we are persuaded the grantor so used the words "next of kin" in the same sense he might have used the words "heirs at law."

 His first solicitude was for his wife and any children that might be born of their union. The provision for his children constituted a contingent remainder. But no child was born and the contingency never arose. The estate to the wife was for life only. And he was evidently solicitous that the property be left under his own control, and that it should

never become that of his wife's relatives. He twice used the word "revert." Should he survive the wife and she have no children of her body by him, then the lands are to "revert" to him. But should the wife outlive him, and die without children of their union, then the lands are to revert to his "next of kin." These complainants, more or less distant relatives, constitute his next of kin, and under the statute then of force, subdiv. 4 of section 2252, Code of 1876, now changed by subdiv. 6 of section 7365, Code of 1923, they would have inherited his estate.

We need not stop to inquire as to the technical accuracy of the statement that a reversion is never created by a deed or other act of the grantor who creates it at the very time when the particular estate is created (21 Corpus Juris 1018; Powell v. Pearson, 220 Ala. 247, 256, 129 So. 39), as that is not to our minds here necessary for consideration. Suffice it to say the use of the word "revert" is not to be ignored. It was evidently given some effect in Due v. Woodward, supra, just as the word "return" was accorded significance in Couch v. Anderson, supra, where the Court said: "But we think it more probable, from the use of the word 'return,' taken in connection with the words which immediately follow it, that, in the event his daughter died without children, his intention was, that the property designed for them should come back, and pass as if no conveyance had been made."

 So, in the instant case, we feel constrained to hold that the grantor meant by the word "revert" to his "next of kin," that the property should "come back, and pass as if no conveyance had been made," to use the language of Couch v. Anderson, supra.

In Due v. Woodward, supra, the Court observed that it could "scarcely be conjectured that the grantor could have intended to tie up the disposition of the fee" in the property until his daughter or after-born children should reach majority.

Applying like reasoning here, it may with much more force be contended that the grantor did not intend to tie up the disposition of his property for those only collaterally related. But that he merely intended to direct "the course of descent from him as ancestor to the lawful heirs," to use the language of Due v. Woodward, supra.

We therefore conclude that the words "next of kin" are properly to be here interpreted as interchangeable with the words "heirs" or "heirs at law," and as thus interpreted to be construed as words of limitation and not of purchase. So construed, the estate in reversion all along remained in the grantor, and he could grant any such reversion, which he did by his will now duly probated. The will, therefore, has precedence over the deed, and should be given its full force and effect.

The decree rendered is not in harmony with these views, and will accordingly be here reversed. A decree will be here entered denying complainants relief and declaring the title to the property described in these proceedings to be vested in the defendant.

It is so ordered.

Reversed and rendered.

ANDERSON, C. J., and BOULDIN and FOSTER, JJ., concur.