A chronology of events leading up to this appeal is as follows:
March 18, 1975 — City National Bank of Birmingham (City National) filed suit against Mrs. Andrews to recover an amount due it by notes executed by El Burrito, Inc. and guaranteed by Mrs. Andrews;
July 24, 1975 — Mrs. Ann Barefield Chambers, Mrs. Andrews' mother, died leaving a will which left the residue of her property to her three children, Mrs. Andrews and two sons in equal shares, share and share alike;
July 28, 1975 — Mrs. Chambers' will was filed for probate;
August 4, 1975 — Letters testamentary were issued to Mrs. Andrews, named executrix of her mother's will;
November 3, 1975 — Mrs. Andrews renounced the devise to her under her mother's will;
November 7, 1975 — The renunciation of Mrs. Andrews of her part of her mother's estate was recorded;
November 17, 1975 — Judgment entered in favor of City National and against Mrs. Andrews; and
December 19, 1975 — City National filed writ of garnishment against the Estate of Mrs. Chambers.
Mrs. Andrews, as executrix of the estate, answered the writ stating that the estate was not indebted to Mrs. Andrews, relying upon the renunciation. City National contested the validity of the answer; and the trial court held that the renunciation was valid and the estate, therefore, was not indebted to Mrs. Andrews.
The bank appealed.
The bank contends that, because Mrs. Andrews was devised and bequeathed the same share under her mother's will as she would have received under the laws of descent and distribution, she must be deemed to have taken by descent and distribution, and cannot renounce her inheritance.
The bank's position is based upon the wills branch of the worthier title doctrine, a common law doctrine which has long been abolished in England, where it evolved by judicial decision in the 16th Century. Hinde v. Lyon, 2 Dyer 124a, 73 Eng.Rep. 271 (1555). The English rule governing wills has been stated as follows:
 "A devise of a present or future interest in land to the heir of the testator, either by name or in form, is void if the heir takes by virtue of the devise precisely the same interest he would have taken if the devise had been stricken out of the will." Morris, The Wills Branch of the Worthier Title Doctrine, 54 Mich.L.Rev. 451, 452 (1956).
Most scholars agree that that doctrine was formulated because, in the Feudal Ages, taking by descent rather than by purchase entitled overlords to tenurial benefits.
 ". . . At one time there was an important rule of law, applicable to devises of land to the testator's heirs, which was to the effect that a devise to the heirs of the testator was a nullity if the interest limited in their favor was identical *Page 343 
to that which such heirs would have taken by descent if there had been no devise to them. . . . This rule originated under the feudal system to preserve the feudal incidents of relief, wardship and marriage. These incidents were preserved only if the new tenant of land acquired his interest by descent from the former tenant, rather than by purchase under the terms of a devise. . . ." Restatement of the Law of Property, Vol. 3, § 314, Comment j. (1940).
The doctrine was adopted in some states in this country, although there is disagreement as to whether it still exists today. Restatement of the Law of Property takes the position that the rule is no longer the law in the United States. § 314 (2). Whether that is true may be debatable; but the scholars are in agreement that the rule serves no purpose in this country and should not be the law. It has been said:
 "At one time it was important to know whether land passed by devise or descent. But today it is impossible to see why it should make any difference whether a person takes the land of a decedent by devise or descent. Hence, although there is some authority to the contrary, the better view is that in so far as the worthier title doctrine is applicable to wills, it is obsolete." American Law of Property, Vol. 1, § 419, page 440 (1952).
We have found no Alabama case which refers to the doctrine by name; but writers generally agree that Alabama has adopted the rule as one of construction rather than as a rule of law, which it clearly was at common law. The rule was recognized by way of dictum in Wilcoxen v. Owen, 237 Ala. 169, 185 So. 897 (1938), and was applied in a deed case in Couch v. Anderson, 26 Ala. 676
(1855). However, a distinction should be made between the will branch of the doctrine and the inter vivos branch. SeeMorris, The Wills Branch of the Worthier Title Doctrine, supra. In the annotation to the Wilcoxen case, in 125 A.L.R. 539, it is pointed out that the doctrine of worthier title in the law of wills has little or no significance today. We find no Alabama case which has applied the rule to void a testamentary disposition of property to the testator's heirs.
In this state, the cardinal rule in cases involving wills is the ascertainment of the intentions of a testator. Applying the worthier title doctrine to wills has often been said to hinder, rather than aid, in the ascertainment of the testator's intention. For that reason, in Mitchell v. Dauphin DepositTrust Co., 283 Ky. 532, 142 S.W.2d 181, 184 (1940), the Supreme Court of Kentucky expressly refused to follow the rule, noting: ". . . it has no place in our jurisprudence." Other courts have also rejected the rule, with varying comments:
 "The purpose for the application of the doctrine of worthier title at common law finds no support in our law. . . ." McNeilly v. Wylie, 389 Ill. 391, 59 N.E.2d 811, 812 (1945).
 "The reason for the rule in England, to that effect, does not apply in this State. . . ." Lucas v. Parsons, 24 Ga. 640, 659 (1857)
We are convinced from our research that the wills branch of the worthier title doctrine has few, if any, defenders. It has been condemned by legal scholars, both within and without the American Law Institute. Commissioners on Uniform State Laws recommends its complete abolition. Uniform Property Act, 9A U.L.A., § 14 (1951). It was abandoned in England where it originated (Stats. 3 and 4, Wm. 4, c. 106, § 3 (1833)). More than one distinguished writer has urged its abolition in this country. See, for example, Harper and Heckel, Doctrine ofWorthier Title, 24 Ill.L.Rev. 627. In Morris, The Wills Branchof the Worthier Title, 54 Mich.L.Rev., supra, at 495, summarizes his article.
 "What meritorious arguments can be made in favor of the wills branch of the worthier title doctrine? The writer can think of none. The rule invites litigation, ensnares the unwary draftsman and frustrates the wary draftsman. As a rule of law it applies to devises made to people who are the most natural objects of the testator's bounty. To the writer's knowledge, *Page 344 
every man who has taken up the pen to write on the policy aspects of the rule has concluded that it has no place in our law. Such unanimity of opinion from all segments of our profession is seldom seen."
Professor Powell, in his treatise, makes this observation:
 ". . . It is to be hoped that all jurisdictions will eventually abolish `worthier title' as a rule of law, and leave the construction of the testator's . . . language to weighted rules of construction." Powell on Real Property, Vol. 3, § 381, page 318.
We are persuaded that the wills branch of the worthier title doctrine is an anachronism in the law and should not be applied. If applied as a rule of law to this case, it would have the effect of voiding the testatrix' will; if applied as a rule of construction, it would have the effect of defeating her expressed intentions, simply to serve a purpose which ceased to exist 250 years ago. We are not inclined to abdicate our responsibility to the legislative body. The legislature did not formulate the rule — the courts devised it to protect the feudal dues of overlords at an earlier time. We have no hesitation to abandon it as a judicial rule in a different time.
We hold that the share of the testatrix' estate passed to Mrs. Andrews by devise and not by descent.
City National argues that if Mrs. Andrews is held to be capable of renouncing her share of her mother's estate, we should hold the renunciation was not timely made. The bank candidly admits that it did not anticipate nor rely upon any inheritance Mrs. Andrews might receive when it made the loan to El Burrito. It is not disputed that the bank's judgment against Mrs. Andrews came after she had renounced her share in the estate; and there is no evidence that the bank was in any way injured by the delay in renouncing by Mrs. Andrews. Furthermore, it has been held that the reasonableness of delay prior to renouncing is an issue for the trier of the fact, provided the heir has not accepted the devise before renouncing. McQuiddy Printing Co. v. Hirsig, 23 Tenn. App. 434,134 S.W.2d 197 (1939); Bacon, Receiver v. Barber, 110 Vt. 280,6 A.2d 9 (1939). The trial judge found that the renunciation was timely. We agree.
Only one issue remains. The bank contends that the renounced share must pass to the heirs of Mrs. Andrews by intestacy. It argues that Mrs. Andrews received a one-third share of her one-third renounced share by descent and distribution, or one-sixth of the total residuary estate. We cannot agree.
The devise to Mrs. Andrews was by way of a general residuary clause designating all three children as residuary legatees. Where there is a residuary clause broad enough to include the rejected property, that property falls into the residuary estate. Myers v. Smith, 235 Iowa 385, 16 N.W.2d 628 (1944); Inre Myer's Estate, 137 Misc. 730, 244 N.Y.S. 398 (1930). Should a residuary legatee renounce, the property goes to the heirs intestate only if there is no alternate or joint residuary legatee who is entitled to take. Brown v. Kalene, 230 Iowa 76,296 N.W. 809 (1941); Lehr v. Switzer, 213 Iowa 658,239 N.W. 564 (1931). Here, there are two residuary legatees who are entitled to the residuary estate. Consequently, the renounced share of Mrs. Andrews should fall to the residuary legatees and pass by devise rather than to the heirs by descent and distribution.
The judgment appealed from is affirmed.
AFFIRMED.
TORBERT, C.J., and MADDOX, JONES and BEATTY, JJ., concur. *Page 345