Ruth Lusk ("the grantee") appeals from the summary judgment entered for the plaintiffs, Elizabeth L. Broyles, Charles A. Lusk, and Homer L. Lusk ("the plaintiff heirs"), declaring that Ruth Lusk has no interest in two parcels of property located in Jackson County, Alabama. We affirm.
The plaintiff heirs, in their complaint, sought a declaration that the grantee has no interest in two tracts of land in Jackson County, and that the property should be sold and its proceeds divided among all of the 12 persons who they contend own interests in the property. They named the grantee, as well as the other nine parties with whom they claimed to hold title to the property, as defendants. After the grantee had filed an answer denying the allegations of the complaint, the plaintiff heirs moved for a summary judgment on the issue of the grantee's interest, attaching to their motion a number of recorded deeds purporting to convey interests in the two parcels of real property. The grantee filed a cross-motion for a summary judgment based upon her preferred construction of the same relevant deeds.
The trial court granted the plaintiff heirs' motion for summary judgment and denied the grantee's motion. The plaintiff heirs and the grantee jointly moved for an order making the summary judgment final, pursuant to Rule 54(b), Ala.R.Civ.P., and their motion was granted. The grantee appealed to the Supreme Court of Alabama, which transferred the appeal to this court. See § 12-2-7(6), Ala. Code 1975. The sole issue on appeal is whether the trial court erred in declaring the grantee to have no interest in the two parcels of real property at issue. *Page 6 
A summary judgment is appropriate upon a showing that no genuine issue of material fact exists and that the moving party is entitled to a judgment as a matter of law. Rule 56, Ala.R.Civ.P. We note that the trial court's judgment is based solely upon its interpretation and construction of the deeds submitted into evidence by the parties. "Because the facts in this case are undisputed, we will review only the correctness of the trial court's application of the law to those facts and whether [the plaintiff heirs were] entitled to a judgment as a matter of law." Ervin v. Deloney Constr., Inc., 596 So.2d 593,595 (Ala. 1992).
In 1949, Andy Lusk and Mary Eliza Lusk executed a deed conveying certain rights in some 130 acres of real property ("Parcel One") to Howard Lusk, who was the direct lineal ancestor of the plaintiff heirs and was also the husband of the grantee. The deed from Andy and Mary Eliza to Howard contains the following pertinent language:
 "KNOW ALL MEN BY THESE PRESENTS: That we Andy Lusk and his wife Mary Eliza Lusk . . . we have this day . . . given, and granted, and by this instrument do give, grant, and convey to . . . Howard Lusk for and during his natural life and at his death to the heirs of his body per stirpes
[Parcel One]. . . .
 "To have and to hold the foregoing described lands unto the said Howard Lusk for and during his natural life, and at his death, the right and title to said lands to vest in the heirs at law of said Howard Lusk. . . ."
(Emphasis added.)[1] Thereafter, in 1952, Andy and Eliza Lusk executed a deed conveying to Howard an interest in an additional 40 acres of land (Parcel Two). This instrument is a printed form with typewritten additions to render it complete, and reads as follows (underscoring to represent typewritten terms):
 "KNOW ALL MEN BY THESE PRESENTS, That we, Andy Lusk and wife, Eliza Lusk, parties of the first part, in consideration of the sum of One Hundred Dollars and other valuable consideration to us in hand paid by R.H. Lusk during his natural life and then to his bodily heirs, party of the second part, the receipt of which is hereby acknowledged, do hereby grant, bargain, sell and convey unto the said part y of the second part, the following described property — to-wit:
"[Parcel Two].
 "It is the intention of the grantors to convey to said R.H. Lusk only a life estate in and to said lands herein described, with remainder to his bodily heirs.
"INTERNAL REVENUE STAMPS PAID $3.75
 "together with all and singular the tenements, hereditaments, rights, members, privileges, and appurtenances, thereunto belonging, or in any way appertaining, to have and to hold the same unto the said part y of the second part, and to his
heirs and assigns, forever; and we hereby warrant the title to the same against all claims whatever.
In 1994, one year before his death, Howard executed a deed purporting to convey a fee simple interest in Parcels One and Two to himself and the grantee as joint tenants with right of survivorship.
In light of these facts, we must consider whether Howard, at the time he executed the 1994 deed to the grantee, possessed a fee simple title to Parcels One and Two or only a life estate therein, with remainders vested in his bodily descendants (which include the plaintiff heirs). The grantee contends that the 1949 and 1952 deeds from Andy and Eliza to Howard conveyed common law estates in fee tail, which by operation of statute are converted to estates in fee simple absolute. See Ala. Code 1975, § 35-4-3. The plaintiff heirs argue that the deeds instead conveyed life estates to Howard and remainders in fee simple to the heirs of his body, and that Howard therefore could not have *Page 7 
conveyed to the grantee anything more than his own life estates (which necessarily terminated upon his death).
In order to construe correctly the 1949 and 1952 deeds to Howard, we must determine whether the references in the deed conveying Parcel One to "the heirs of his body," and in the deed conveying Parcel Two to "his bodily heirs," are words ofpurchase or are merely words of limitation. We note that
 "[i]n general, words of purchase are those by which, taken absolutely without reference to or connection with any other words, the estate first attaches or is considered as commencing in the person described by them, whilst words of limitation operate by reference to or connection with other words and extend or modify the estate given by those other words."
Wilcoxen v. Owen, 237 Ala. 169, 177, 185 So. 897, 903 (1938). If the words "the heirs of his body" and "his bodily heirs" under the law constitute merely words of limitation of the estate granted to Howard, then the grantee is correct — §35-4-3 nullifies the attempt by the original grantors to limit Howard's estate to one in fee tail and automatically converts his estate to one in fee simple. However, if the references to Howard's bodily heirs grant a separate estate in the heirs from that granted to Howard, they are words of purchase.
At common law, when an ancestor by any gift or conveyance took an estate of freehold, and in the same gift or conveyance the estate was limited to his or her heirs in fee or in tail, the words "the heirs" were deemed as a matter of substantive law to be words of limitation and not of purchase. See Wolfe v.Shelley, 72 Eng. Rep. 490 (1581). This is the famous, or infamous, principle of property law known as the "Rule in Shelley's Case." However, this rule of the common law is not followed in Alabama because it has been superseded by statute.See Ala. Code 1975, § 1-3-1. Section 35-4-230, Ala. Code 1975, provides as follows:
 "Where a remainder created by deed or will is limited to the heirs, issue or heirs of the body of a person to whom a life estate in the same property is given, the persons who, on termination of the life estate, are the heirs, issue or heirs of the body of such tenant for life are entitled to take as purchasers by virtue of the remainder so limited by them."
This statute first appeared as § 1304 of the 1852 Code of Alabama, and it has appeared in each subsequent Code; our supreme court has stated that its effect is
 "to abolish the Rule in Shelley's Case, the abolition being not in express terms, but by altering the effect of conveyances falling within that rule so that estates granted by them should vest by purchase in the persons, who on the termination of the life estate, answer the description of the descendants named in the conveyance."
Wilson v. Alston, 122 Ala. 630, 635, 25 So. 225, 227 (1899).
Thus, the Rule in Shelley's Case would have operated to convert automatically a conveyance of a life estate to a grantee with remainder in fee to the grantee's heirs into a conveyance of a fee in the grantee. However, § 35-4-230 alters this arbitrary rule, requiring that a grantor's intent to sever a grantee's life estate interest from the grantee's heirs' remainder interest be honored according to the express terms of the conveyance. As our supreme court stated seven years after its original enactment, § 35-4-230
 "applies to all cases, where an estate is given to A. expressly for life, with remainder, or at the death of A., the first taker, to the heirs, or heirs of the body of such grantee or devisee. It also embraces all cases, where an estate is given generally to A., followed by the words, 'with remainder,' or 'at the death of A.,' (or other equivalent expression,) to the heirs, issue, or heirs of the body of A. In each of these cases, before our statute, a fee or absolute title would vest in A., the first taker; while in each it is morally certain that a life estate only was intended, but which life estate was enlarged into a fee, or absolute title, by force of the rule in Shelley's case."
Mason v. Pate's Ex'r, 34 Ala. 379, 390 (1859); accord, Bishopv. Jones, 227 Ala. 171, 172, 149 So. 72, 72-73 (1933) (grant to daughter *Page 8 
"during her natural life and at her death . . . in fee to the heirs of her body" created life estate in daughter and remainder in fee to her bodily heirs). In other words, a conveyance that specifically grants a remainder interest to a class of heirs or heirs of the body of a grantee uses words of purchase when it employs the terms "heirs" or "heirs of the body," not words of limitation.
We now turn to the precise language of the 1949 and 1952 deeds themselves to determine whether they may be classified as expressly giving Howard a life estate and his bodily heirs a remainder. The granting clause of the 1949 deed to Parcel One conveys Parcel One to Howard Lusk for and during his naturallife. Moreover, the same clause specifically grants Parcel One "to the heirs of his body per stirpes" at Howard's death.[2] This language expressly conveys both a life estate to Howard and a remainder interest in his bodily heirs within the rule of Mason
and Bishop. Similarly, the granting clause of the 1952 Parcel Two deed, while less artfully drafted, conveys Parcel Two to Howard during his natural life, and conveys a remainder interest to his bodily heirs. Indeed, the grantors' intent to do this is evidenced by their statement in the deed that it was their intention "to convey to said R.H. Lusk only a life estate
in and to [Parcel Two], with remainder to his bodily heirs." Thus, as a matter of law, Howard in 1994 could have conveyed only his life estates in Parcels One and Two to the grantee, which life estates necessarily terminated upon his subsequent death.
The trial court correctly concluded that the grantee held no interest in Parcels One and Two after Howard's death. Consequently, its judgment is due to be affirmed.
AFFIRMED.
YATES, MONROE, CRAWLEY, and THOMPSON, JJ., concur.
[1] The grantee did not raise any issue of inconsistency between the granting clause and the habendum clause in the trial court or on appeal. We note that "the granting clause in a deed prevails over the habendum [clause], if that clause is contradictory of, or repugnant to, said granting clause."Little v. Hunter, 289 Ala. 6, 13, 265 So.2d 441, 446 (1972).
[2] See note 1 regarding resolution of any inconsistency between the granting clause and the habendum clause.