In the Matter of the Estate of PETER F. MEYER, Deceased.

Surrogate's Court, New York County, August 11, 1930.

*Stewart & Shearer* [*George L. Shearer* and *John Henry Mottola* of counsel], for United States Trust Company of New York, as trustee.

*Stephen E. Ryan*, for John Meyer and another and in person.

*Prince, Burlingame & Nourse* [*Arthur E. Pettit* of counsel], for the respondent Chauncey L. Mitchell.

*John H. Rogan*, for the respondent City Bank Farmers Trust Company.

*Cannon & Cannon* [*Charles M. Cannon* and *Wilfrid N. O'Neil* of counsel], for St. Agnes Hospital for Crippled and Atypical Children.

*Gillespie & O'Connor* [*George J. Gillespie* and *William F. Delaney* of counsel], for St. Joseph's Seminary and College.

*Joseph H. Fargis*, for Fordham University.

FOLEY, S. This is an application by the United States Trust Company of New York, the sole surviving trustee, to vacate that part of the decree of this court made November 6, 1929, which directed the payment to the Home for the Aged of the Little Sisters of the Poor of certain benefits under the will. The specific amounts adjudged to be paid were a pecuniary legacy in the sum of $50,000 and an interest in the residue. After this decree was entered and on April 11, 1930, the trustees of the home, to whom these amounts were directed to be paid, by formal resolution, renounced and declined the legacy and the other benefits under the will. It appears that this renunciation was due to the rules of the order which forbid the receipt of funds to which a specific condition is attached, or which are to be retained in a permanent trust with directions to use the income only for a limited purpose. The provisions of the will of Mr. Meyer and the conditions attached to the gift by him were deemed by the trustees of the charity to be within these restrictions.

It further appears, by reason of the magnitude of the gifts to charity contained in the will, that its terms were in violation of section 17 of the Decedent Estate Law (as amd. by Laws of 1929, chap. 229). That section provides: " No person having a husband, wife, child or descendent or parent, shall, by his or her last will and testament, devise or bequeath to any benevolent, charitable, literary, scientific, religious or missionary society, association, corporation or purpose, in trust or otherwise, more than one-half part of his or her estate, after the payment of his or her debts, and such devise or bequest shall be valid to the extent of one-half, and no more."

In a construction proceeding, which was terminated by a decree made on August 15, 1928, the will of the testator was held to have violated that section and it was determined that the various gifts to charity were valid to the extent of one-half of the estate, less debts, and no more.

The renunciation of the benefits by the Home for the Aged has, however, completely changed the situation in the estate and renders necessary the determination of certain preliminary questions of construction which have arisen and the final question as to whom the amounts renounced shall be paid.

(1) As to the question of the interpretation of the will caused by the relinquishment by the Home for the Aged, it is beyond dispute that the pecuniary legacy to it lapsed and became a part of the residuary estate. The residue was originally created by the terms of the will into a trust, with income to be paid to the widow of the testator. After her death, the testator directed that two trust funds be set up for the life of individual beneficiaries, $382,000 was given to charities (of which the pecuniary bequest to the Home for the Aged was one), and the residue was to be divided into three equal shares, of which one-third was directed to be paid to the Home for the Aged; a second one-third to a children's hospital, and the remaining part disposed of by a gift of one-sixth to each of two educational institutions. Under the rule which deals with the vesting of a " residue of a residue," the legal effect of the renunciation by the Home for the Aged is to devolve its lapsed share, by intestacy, on the next of kin of the testator. (*Wright* v. *Wright*, 225 N. Y. 329, at p. 340.) To them likewise goes the proportionate share of the Home for the Aged in the lapsed pecuniary legacy which fell into the residue.

(2) With these legal principles settled, the distribution of the estate and the correction of the prior decree become a simple question of the mathematical recomputation of the amounts which may be legally paid to the remaining residuary charities. The effect of the renunciation or disclaimer of the Home for the Aged is to remove that institution, from the very death of the testator, as a beneficiary under the will. Its interests never became effective for any purpose. The relinquishment was not a conveyance, and by its refusal the bequests to the Home for the Aged became null. (*Burritt* v. *Silliman*, 13 N. Y. 93; *Matter of Merritt*, 155 App. Div. 228; *Matter of Wolfe*, 89 id. 349; affd., 179 N. Y. 599; *Matter of Clarkson*, 137 Misc. 741.) The bequest never took effect and the title to it never vested. (*Albany Hospital* v. *Albany Guardian Society, etc.*, 214 N. Y. 435.) In the latter case the effect of a disclaimer or a relinquishment by a legatee was thoroughly

considered by the Court of Appeals. After a discussion of various authorities in England and in New York and in other States, it was held that the " devise lapsed, either becoming by relation back void *ab initio* or never taking effect at all according to the theory adopted in the case of a rejected devise." In this new situation, we thus have an entirely different method of distribution from that contemplated in the decree and the will itself. The bequest to the Home for the Aged becomes transformed into a succession to the next of kin. The method of computation of the benefits to charity and the effect of section 17 of the Decedent Estate Law in the prior decree on accounting were based upon a mistake of fact, by reason of the inclusion of the interests of the Home for the Aged as part of the gifts to charity. The total of the latter gifts was thereby erroneously magnified and the amounts payable to the other residuary charitable legatees erroneously reduced. The computation itself is completely incorrect by reason of the newly-established facts. I accordingly hold that the prior computation must be entirely disregarded and a new computation made. The decision of the Court of Appeals in *Chamberlain* v. *Chamberlain* (43 N. Y. 424, 447) and the note thereto, seem sufficient authority to support my conclusion. Under the terms of the will and taking into consideration the lapse of the $50,000 legacy to the Home for the Aged, if section 17 of the Decedent Estate Law had not applied, the other charitable legatees would have been entitled to receive the following amounts: Fordham University, $376,201.56, which is one-sixth of the residue; St. Joseph's Seminary, $376,201.56, which is one-sixth of the residue; St. Agnes Hospital for Crippled and Atypical Children, $752,403.12, one-third of the residue. By the operation of section 17 and its limitation of all charitable gifts under the will to one-half of the estate, less debts, the maximum amount distributable to the charities is $1,703,726.68. The first deduction from this amount is the total of the preferred gifts to charities which come in priority over the residuary gifts. These general cash legacies, after deducting the legacy of $50,000 renounced by the Home for the Aged, now amount to $332,000. The difference between this sum and the maximum lawfully distributable to all the charities is $1,371,726.68. The division of this amount between the remaining residuary charities, in the proportions fixed by the will, results in the fixation of the shares which these charities were legally entitled to take at the following amounts: Fordham University, $342,931.67; St. Joseph's Seminary, $342,931.67; St. Agnes Hospital for Crippled and Atypical Children, $685,863.34. The previous decree fixed the amount payable to the next of kin and heirs at law at the sum of $885,482.68 which represented the

excess over the one-half allowable by section 17 of the Decedent Estate Law. Under the new conditions developed by the renunciation, this amount was too large in so far as it applies to section 17. But the practical result is the same. The heirs at law and next of kin are entitled to $752,403.12 — one-third of the residue — by reason of the lapse of the share of the residue bequeathed to the Home for the Aged. The difference between the amount apportioned to them in the prior decree and their new share of the residue is $133,079.56, and this amount passes to them as the excess over the legal charitable maximum. The practical effect, therefore, although not resulting from any legal transfer, is to vest the amount directed to be paid by the prior decree to the Home for the Aged in the three other residuary charitable legatees. It will be noted from the above figures, and particularly from the amount that passed to the next of kin by the lapse of a part of the residue, that the amounts directed to be paid to these charities by my decision are less than the benefits to which they were entitled if section 17 did not apply.

(3) The remaining question involves the right of the estate of Lizzie O. Meyer, the widow of the deceased, to participate in the distribution of the intestate property. The next of kin of the testator contend that under the terms of the will the widow is confined to the specific benefits created for her and was not entitled to share in the fund which passed by operation of law. This question I hold to be *res adjudicata* by virtue of two prior decrees in this estate. The next of kin themselves were the petitioners in the construction proceeding and they procured a decree dated August 15, 1928, which specifically adjudged that the persons entitled to participate in the intestate fund, in accordance with the Statute of Descent and Distribution, were (1) themselves as the heirs and next of kin of the testator, and (2) " Lizzie O. Meyer, widow of said decedent." My decision in that proceeding (N. Y. L. J. July 11, 1928) recites that the construction proposed by the next of kin was consented to by all the parties. An examination of the papers in the construction proceeding clearly establishes that there was a complete acquiescence by the next of kin as petitioners in the decree ultimately made. No appeal was taken and the adjudication must be deemed to be conclusive. It should also be noted that there was further acquiescence in the same method of distribution in the subsequent decree on accounting made on November 6, 1929. While it is thus immaterial here because of this conclusion just discussed, I would hold, if the matter were before me anew, that the terms of the will did not exclude the widow or her estate from receiving her intestate share of the property.

Submit decree on notice, therefore, amending the prior decree by directing payment of the additional sum of $122,643.89 each to Fordham University and St. Joseph's Seminary, and the additional sum of $245,287.78 to St. Agnes Hospital for Crippled and Atypical Children.