In the Matter of the Accounting of BANK OF NEW YORK AND FIFTH AVENUE BANK, as Trustee under the Will of JOHN B. COLGAN, Deceased.

Surrogate's Court, New York County, February 13, 1953.

*George W. Martin* and *Joseph K. Savage* for trustee, petitioner.

*Joseph V. McKee* for New York Foundling Hospital, respondent.

*Francis R. Doherty* for St. Agnes Hospital for Crippled Children, respondent.

*George M. Clarke, Mary C. Durr* and *Lewis A. Clarke* for First National Bank of Mount Vernon, as executor of Florence Dietrich, deceased, respondent.

*Nathaniel L. Goldstein, Attorney-General (Kenneth D. Shearer* of counsel), in his statutory capacity under section 12 of Personal Property Law and section 113 of Real Property Law, respondent.

COLLINS, S. Decedent's will, admitted to probate in the year 1928, directed that, from the residuary estate, sufficient sums be set aside to pay a number of " annuities " and that as an " annuitant " died the assets previously set apart to produce the terminated " annuity " be held and invested by the testamentary trustee and the income derived therefrom be divided equally among four named charities, viz.: Home for the Aged of the Little Sisters of the Poor, St. Agnes' Hospital for Crippled Children, New York Foundling Hospital and St. Rose's Free Home for Incurable Cancer. The will further directed that the balance of the residuary estate, not required for the purpose of the annuities, be held and invested by the trustee and the income be paid to the same four charities.

In March, 1930, the corporate executor, which is also the trustee under the will, petitioned this court for the judicial settlement of its account as executor. The account then filed reported payments from estate income of $500 to each of the four charities named in the will. On April 23, 1930, the Home for the Aged of the Little Sisters of the Poor executed an instrument by which it renounced its right to any and all payments under decedent's will and declined to receive any further payment from the executor and trustee. Thereafter in October, 1930, the executor filed an amended petition alleging the fact that this charity had executed a renunciation of benefits and the executor requested instructions as to the disposition to be made of the income which, but for the renunciation, would have been payable to such charity. Citation in the accounting proceeding was returned on April 17, 1931. In that proceeding the Surrogate ruled that, by reason of the renunciation, decedent died intestate as to one fourth of the residuary estate (N. Y. L. J., June 1, 1931, p. 1200, col. 1) and a decree and an amended decree were made on December 18, 1931, and January 11, 1932, respectively adjudging that decedent died intestate as to one quarter of his residuary estate, that his heirs at law at the time of his death became seized and vested with an undivided one-quarter interest in the real estate of which decedent died seized and possessed, that his next of kin became entitled to one quarter of the personal property constituting decedent's residuary estate and that decedent's next of kin at the time of his death became entitled to a one-quarter remainder interest in the principal of the trust funds established for the benefit of the six life beneficiaries named in the will. The decretal provision last referred to indicates that the parties and the court considered decedent's testamentary provisions for annuities as creative of testamentary trusts rather than true annuities but that distinction does not enter into the immediate problem.

One of the individual trust beneficiaries (or so-called annuitants) died in 1932, and the trustee thereupon procured the settlement of its account by a decree dated October 25, 1932. Subsequently other beneficiaries died and a later account of the trustee was settled by a decree dated October 9, 1941. In 1950, the last survivor of the individual beneficiaries died. The instant proceeding has been brought by the trustee for the settlement of its final account of the trust for such beneficiary and its intermediate account of the charitable trusts. At the time of the institution of the instant proceeding there presum-

ably did not exist in the mind of the accounting party any doubt as to the definiteness and certainty of the beneficiaries designated under the will nor was there any circumstances that rendered literal compliance with the will impossible but, nevertheless, the Attorney-General of the State was cited as a party to the proceeding (cf. 51 N. Y. St. Dept. Rep. 295). The Attorney-General has appeared herein and has filed an answer and objections to the account which in substance allege that upon the renunciation of benefits under decedent's will by the Home for the Aged of the Little Sisters of the Poor the doctrine of cy pres should have been invoked to effectuate the charitable purpose of the testator, and the prior decision of the court, which held that the renunciation effected a partial intestacy, and the decrees entered on such decision settling the account of the executor are not binding upon the Attorney-General who was not a party to any prior proceeding in the estate.

Examining the state of the law at the times of prior proceedings in this estate it appears that when the executor's accounting proceeding was instituted in this court and when citation was returned in that proceeding, the Surrogate lacked jurisdiction to exercise the cy pres power, since jurisdiction for such purpose was first conferred upon the Surrogates by an amendment of section 12 of the Personal Property Law, effective April 21, 1931 (L. 1931, ch. 562). That amendment was recommended by the Commission to Investigate Defects in the Laws of Estates and the late Surrogate FOLEY, who rendered the prior decision in this estate, was chairman of the commission (see note Combined Reports of Decedent Estate Comm., Reprint, pp. 435–436). When the executor's accounting proceeding was brought this court unquestionably had the power to construe decedent's will and to determine the general validity of the charitable bequest but no direction could be made involving the application of the cy pres doctrine and, if the Surrogate considered that doctrine applicable, it was necessary to remit the parties to an independent action or proceeding in the Supreme Court (Combined Reports of Decedent Estate Comm., Reprint, pp. 417–418). When the court first acquired jurisdiction in the proceeding, its power was confined to a construction of the will and, as essential to construction, a determination of the intention of the testator. Upon renunciation of a gift by a charity, the issue before the court was whether decedent manifested an intention to make a gift to that particular charity or an intention to aid charity generally (3 Scott on Trusts, p. 2075; 2 Bogert on Trusts, § 436; *Matter of Merritt,* 280 N. Y. 391; *Matter of Neher,* 279 N. Y.

370; *Matter of Jones,* 201 Misc. 881; *Matter of Stuart,* 183 Misc. 20). The Attorney-General was not a necessary party to the determination of that issue since the provisions of the Personal Property Law and the Real Property Law requiring notice to that official then had no application to a proceeding for the construction of a will in the Surrogate's Court and it is only because of later amendments to those statutes that the Attorney-General today becomes a party to such proceedings in this court.

Surrogate FOLEY determined the construction proceeding on the basis on which it was submitted to him. The Surrogate did not rule explicitly on the question of cy pres but it is apparent that Surrogate FOLEY did not consider the provisions of section 12 of the Personal Property Law to be applicable to this decedent's will. The determination of the Surrogate that decedent's heirs at law and next of kin became vested with one quarter of the residuary estate indirectly ruled out any application of the cy pres power and implicitly held that no basis existed for the exercise of that power. That determination was one that the Surrogate had authority to make and there was then before the court all the parties necessary for such an adjudication.

The same Surrogate later had a similar fact situation before him in *Matter of Meyer* (137 Misc. 730) wherein the issue arose because of a renunciation by the identical charity that renounced in this estate. In the *Meyer* case the Surrogate also ruled that the renounced benefit passed as intestate property. That ruling was based on *Wright* v. *Wright* (225 N. Y. 329, 340) wherein the court considered a bequest to the Washington Heights Library, a corporation that maintained a public library for the free circulation of books in the community. The facts in the cited case were that shortly before the testator's death legislation was enacted permitting the consolidation of library corporations in New York City and providing that legacies to a library corporation entering into such consolidation would not abate but would be preserved for the benefit of the New York Public Library, the consolidated corporation. Prior to the time for the payment of the legacy in question the Washington Heights Library transferred its property to the New York Public Library and surrendered its charter. The court held that under these circumstances the Washington Heights Library had ceased to exist before it became entitled to the legacy and the legacy had lapsed. The court made no reference to the cy pres doctrine and the Attorney-General was not a party to the action which originated in the Supreme Court.

In *Matter of Meyer* (*supra*), the Surrogate also cited *Albany Hosp.* v. *Albany Guardian Soc.* (214 N. Y. 435), a decision which held that a renounced devise to a church lapsed and passed under the general residuary clause of the will.

In *Matter of Walter* (150 Misc. 512, 516) Surrogate FOLEY stated his concept of the rule of law to be " that where the legacy has legally and actually lapsed, the doctrine of cy pres cannot save the gift ", and the Surrogate reiterated this concept in *Matter of Walker* (185 Misc. 1046, 1057) with the statement: " The rule is settled that where a legacy has lapsed, the doctrine of cy pres cannot save the gift. (*Wright* v. *Wright, supra.*) No subsequent decision of the Court of Appeals has changed that rule."

It is to be noted that in none of the above-cited cases was the Attorney-General a party to the action or proceeding and the conclusion to be drawn is that the courts did not consider the absence of that official as consequential so long as there was no occasion to employ the cy pres principle in the determination of the issues presented. The note of the Commission to Investigate Defects in the Laws of Estates appended to the 1931 amendment of section 12 of the Personal Property Law clearly evidences that Surrogate FOLEY, as chairman of that commission, was fully aware of the requirements for citing the Attorney-General in cases involving the application of the cy pres power and the Surrogate's ruling in this estate as well as in other like matters must be taken as indicative of an attitude that the Attorney-General was a necessary party only in proceedings involving actual exercise of the cy pres power.

The answer and the objections of the Attorney-General herein would seem to raise issue as to the correctness of Surrogate FOLEY's determination, implicit in his decision, that the Attorney-General was not a necessary party to the prior proceeding in this estate. It must be conceded that if the cy pres power was in nowise involved in the issue before the Surrogate there was no requirement to give notice to the Attorney-General. The decision of the Surrogate was that the cy pres doctrine was not relevant to the issue before him. Can this court now, after the expiration of over twenty years, review this determination upon either the ground that the cy pres power should have been exercised or the ground that the facts of the case were such as to require that notice then should have been given to the Attorney-General in order to permit him to argue (futilely, it is to be presumed) for application of the cy pres doctrine?

Unless the circumstances warranted exercise of the cy pres power the Attorney-General had no interest in the case. The exercise of that power always involves a large measure of discretion (*Sherman* v. *Richmond Hose Co.,* 230 N. Y. 462, 473; *Matter of Dillenback,* 189 Misc. 538, 541, affd. 273 App. Div. 1051; *City Bank Farmers Trust Co.* v. *Arnold,* 283 N. Y. 184, 195) and the Appellate Courts have refused to review such discretion (*City Bank Farmers Trust Co.* v. *Arnold,* 268 N. Y. 297, 305). Not only would it be unseemly for this court to comment on the exercise of discretion by a predecessor in office but this court lacks the authority to review the exercise of such discretion.

The decision now challenged over a score of years subsequent to its rendition was relied upon by the trustee who distributed estate assets in good faith. While the objections interposed herein can relate only to the portion of the estate now accounted for, the immediate success of the objectant would be the first link in a concatenation of litigation seeking recoupment of funds long since dissipated by innocent persons. There has been a marked liberality in the judicial approach toward the question as to the validity and effectiveness of attempted testamentary dispositions for charitable purposes and the judicial trend has been to sustain such gifts although the earlier decisions had construed like dispositions as invalid. One can only conjecture as to the influence that the decisions in *City Bank Farmers Trust Co.* v. *Arnold* (*supra*) would have had upon the Surrogate had these opinions been in the reports in the earlier stages of this estate. Certainly it is not the province of this court to engage in such conjecture. The court concludes that it may not review the earlier determination in this estate that the cy pres doctrine was inapplicable to decedent's will.

The answer and objections of the Attorney-General are dismissed. Submit decree on notice settling the account.